**SILENT DRIVE, INC., Plaintiff–Appellant,**

*v.*

**STRONG INDUSTRIES, INC. and Brooks Strong, Defendants–Appellees.**

**No. 02–1329.**

United States Court of Appeals, Federal Circuit.

DECIDED: April 16, 2003.

---

Christine Lebrón Dykeman, McKee, Voorhees & Sease, P.L.C., of Des Moines, Iowa, argued for plaintiff-appellant. With her on the brief were Edmund J. Sease and Jeffrey D. Harty. Of counsel was Ronald M. Sotak.

Roger T. Stetson, Belin Lamson McCormick Zumbach Flynn, A Professional Corporation, of Des Moines, Iowa, argued for defendants-appellees. With him on the brief was Margaret C. Callahan.

Before LINN, DYK, and PROST, Circuit Judges.

DYK, Circuit Judge.

Silent Drive, Inc. ("plaintiff" or "Silent Drive") appeals the dismissal by the United States District Court for the Northern District of Iowa of the plaintiff's complaint against Strong Industries, Inc. and Brooks Strong (collectively "defendants") for lack of personal jurisdiction. *Silent Drive, Inc. v. Strong Indus., Inc.*, No. C01–4015, 2002 WL 1712329 (N.D.Iowa Mar. 4, 2002). We reverse and remand.

## BACKGROUND

The central question here is whether the Iowa federal district court had personal jurisdiction. Silent Drive and Strong Industries are competitors in the manufacture of trailing axles, which are auxiliary suspension systems attached to the backs of trucks to increase payload capacity. Silent Drive is an Iowa corporation whose principal place of business is in Orange City, Iowa. Strong Industries is a Texas corporation whose principal place of business is in Houston, Texas. Brooks Strong, the president of Strong Industries, is a resident of Texas.

Strong Industries has never specifically advertised in Iowa, nor has it ever had an office or place of business there. Strong Industries was a customer of Silent Drive in the late 1980's or early 1990's. Strong Industries also entered into one agreement with an Iowa dealer that was terminated in 1994 and another that was terminated in 1995. During that period, it demonstrated one of its axles in a trade show in Iowa, and Brooks Strong also visited there once. In 2000, Strong Industries sold a cylinder assembly to an Iowa dealer, F.O.B., and equipment for two dump trucks to another Iowa business, which picked the equipment up in Houston.

The present dispute does not relate directly to Strong Industries' limited business activities in Iowa. Rather, it concerns three other actions taken by the defendants outside of Iowa. The following is alleged:

First, Strong Industries and Brooks Strong obtained a Texas state court in-

junction enjoining Silent Drive (by name) and attempted to enforce that injunction. The background of the injunction is as follows.

Silent Drive and F.S. New Products, a Texas corporation, apparently collaborated in creating a trailing axle with the proprietary name MAXLE, to which Silent Drive contributed the air suspension system. (Compl. at 4–5.) In 1999 Strong Industries and Brooks Strong commenced litigation against F.S. New Products and others in the Texas state district court for Harris County, alleging that the defendants had misappropriated Strong Industries' trade secrets in creating the MAXLE. Silent Drive was not a party to the case, and no one employed by the company participated in it. On October 27, 2000, after a trial, the Texas court entered final judgment for Strong Industries and Brooks Strong, agreeing that their axle was subject to trade secret protection. However, the relief granted was not limited to the defendants in that action. The Texas court ordered transfer of ownership of all patents and patent applications associated with the MAXLE to Strong Industries and Brooks Strong and perpetually enjoined the defendants "and their officers, agents, servants and employees, and everyone in active concert or participation with either of them, including but not limited to SILENT DRIVE, INC. and SILENT DRIVE, INC. IOWA DIVISION each of Orange City, Iowa, who shall receive actual notice of the Order by personal service or otherwise," from

> designing, manufacturing, testing, selling, offering to sell, distributing, installing, repairing, or altering (1) any trailing axle assembly whose design is based upon or derived from, in whole or in part, the Trade Secret Information of STRONG [Strong Industries and Brooks Strong], including but not limited to the "MAXLE" trailing axle; (2)

> any accessories for dump trucks compatible with such trailing axle assemblies or whose design is based upon or derived from, in whole or in part, the Trade Secret Information of STRONG; (3) any combination of such trailing axle assemblies and compatible dump trucks; and (4) from disclosing, publishing, or disseminating or using, in any manner, any of the Trade Secret Information of STRONG.

*Strong Indus., Inc. v. Tesco Am., Inc.*, No. 1999–00011, slip op. at 4 (11th Dist Ct. Harris County, Tex. Oct. 27, 1999) ("Final Order"). The defendants in this case have appealed, and Strong Industries brought a contempt action in state court against Silent Drive for alleged failure to comply with the injunction. Silent Drive removed the case to the District Court for the Southern District of Texas, which dismissed the case on March 13, 2002.

Second, Brooks Strong was the third named inventor of U.S. Patent No. 6,116,-698 ("the '698 patent"), with an effective filing date of December 29, 1994, and an issue date of September 12, 2000. The '698 patent was assigned to Brooks Strong. The patent claims are directed to an improved design for a combination of a trailing axle and dump truck that does not attach to the tailgate and does not obstruct the load discharge area. The MAXLE is alleged to infringe the '698 patent.

Third, Strong Industries and Brooks Strong sent letters to Silent Drive and Silent Drive's customers outside Iowa concerning the Texas injunction and the '698 patent. On October 20, 2000, counsel for Strong Industries and Brooks Strong sent a letter to the president of Silent Drive to inform him of the '698 patent, which was enclosed. "I understand from trade sources that Silent Drive is not currently manufacturing any design of a trailing axle

assembly, and has not manufactured any for quite some time now," the letter said. (J.A. at 105.) "Accordingly, the enclosed patent, which I obtained last month, might therefore be of academic interest only to your company." *Id.*

On December 5, 2000, counsel for Strong Industries and Brooks Strong sent a letter to the president of Silent Drive with which he enclosed a copy of the Texas final order. The letter explained that the final order "basically ... prohibits Silent Drive and its Iowa Division from having anything whatsoever to do with the MAXLE and any other trade secret information of Strong Industries or Brooks Strong." *Id.* at 72. It continued:

> The purpose of this letter is, therefore, two-fold. The first purpose is to ensure that Silent Drive receives actual notice of the Final Judgment and injunction. The second is to inquire as to whether, having received actual notice, you intend to cause Silent Drive to abide by the terms of the injunction or to ignore the terms of the injunction. In reaching your decision, I would suggest that you consult your competent counsel as to the consequences of violating the terms of this injunction; I am confident he will advise you that the possible consequences include monetary fines and imprisonment for up to six months *per occurrence,* and compensatory damages to Strong Industries. I am also confident he will advise you that while corporations cannot serve jail sentences, their officers can, and that you personally are also included by the language of the injunction and personally subject to its terms and consequences for violation.

*Id.* at 73. Strong Industries and Brooks Strong sent substantively identical letters, each with a copy of the injunction, to customers of the plaintiff in Minnesota and Oregon. In November Strong Industries and Brooks Strong issued a news release in which they described the injunction and the '698 patent. The news release paraphrased Strong Industries' and Brooks Strong's patent counsel, who said it was "'inconceivable' that someone could attach a trailing axle to the bed of a dump truck without infringing either this or another of the Strong stable of patents." *Id.* at 300. Among the recipients of the news release was an Iowa dealer of trailing axles, a potential customer of Silent Drive.

On February 14, 2001, following these three actions of Strong Industries and Brooks Strong, Silent Drive filed a complaint against Strong Industries and Brooks Strong in the United States District Court for the Northern District of Iowa containing three counts.[1] The complaint stated that the jurisdictional bases were "the patent laws of the United States, more particularly, Title 35 U.S.C. § 1, *et seq.*" and 28 U.S.C. § 2201, *et seq.* (Compl. at 3.) "There is an actual case or controversy between Plaintiff and Defendants, and jurisdiction of this Court arises under 28 U.S.C. § 1331 [the general federal question jurisdiction provision] and § 1338(a) [the provision conferring jurisdiction over suits under the patent laws], there being federal and patent questions at issue." *Id.*

Count I incorporated paragraphs 13 through 19 of the complaint, which described the actions of the defendants summarized above. Count I sought declaratory relief that "[p]laintiff, as a non-party to the Texas case, and a person who was not notified, on whom process was not served, and over whom jurisdiction was not pres-

---

**1.** There were two further counts in the complaint asserting claims against F.S. New Products and Fred Smith, the president of F.S. New Products; but Silent Drive has settled those claims, and they are not in issue in this appeal.

ent is not and cannot be bound by the injunction entered by the State Court in Texas." *Id.* at 7. Count II alleged that the letters the defendants had sent to Silent Drive's customers "deter[red] prospective customer relationships and interfere[d] with existing customer relationships in a manner that [wa]s improper, [and] cause[d] harm to Plaintiff ... Such acts as above alleged constitute tortious interference with actual and prospective contractual relationships, and as such constitute tortious conduct, which will continue unless enjoined by this Court." *Id.* at 7–8. Count III asked for a declaration of patent invalidity and non-infringement with regard to the '698 patent and alleged that the "[p]laintiff has been threatened, if not directly, impliedly, with respect to patent infringement of Strong's '698 patent." *Id.* at 7–8.

The defendants moved to dismiss the complaint for lack of personal jurisdiction. The district court concluded that the defendant's activities in Iowa were too sporadic to confer general jurisdiction and thus considered whether specific jurisdiction existed. The court focused on Count III. The court held that Iowa's long-arm statute conferred jurisdiction to the maximum extent permitted by the federal Constitution. It found, however, that the defendants lacked the "minimum contacts" with Iowa required by the Due Process Clause of the Fifth Amendment. *Silent Drive*, slip op. at 18. It held that, although the letters were purposefully directed at the forum state and arose out of the patent count, the letters could not confer personal jurisdiction under this court's precedent. *Id.* at 13–18. The district court did not explicitly consider whether there could be personal jurisdiction under Counts I or II. It therefore dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). *Id.* at 18.

The plaintiff appealed to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I

■ As in the district court, there is no claim here that the defendants' activities were extensive enough to confer general personal jurisdiction, which requires that the defendant have "continuous and systematic" contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350, 63 USPQ2d 1705, 1709 (Fed.Cir.2002); *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375, 56 USPQ2d 1965, 1970 (Fed.Cir.2000). Rather, the plaintiff asserts that specific personal jurisdiction over the defendants exists. Specific personal jurisdiction must be based on activities that "arise[ ] out of" or "relate[ ] to" the cause of action and can exist even if the defendant's contacts are "isolated and sporadic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Deprenyl*, 297 F.3d at 1350, 63 USPQ2d at 1709; *LSI Indus.*, 232 F.3d at 1375, 56 USPQ2d at 1970.

■ The test for whether specific personal jurisdiction exists has two steps. First, we look to the state long-arm statute and see whether it is satisfied. *Deprenyl*, 297 F.3d at 1349–50, 63 USPQ2d at 1709; *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354, 61 USPQ2d 1696, 1698 (Fed. Cir.2002); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359, 58 USPQ2d 1774, 1776 (Fed.Cir.2001); *Red Wing Shoe Co. v.*

*Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1358, 47 USPQ2d 1192, 1194 (Fed. Cir.1998). There is no contention that state long-arm jurisdiction is lacking here if due process requirements are satisfied. *See Hodges v. Hodges,* 572 N.W.2d 549, 552 (Iowa 1997). If state law confers jurisdiction, we decide whether the court's exercise of jurisdiction satisfies the requirements of due process. *Deprenyl,* 297 F.3d at 1350, 63 USPQ2d at 1709; *Hildebrand,* 279 F.3d at 1354, 61 USPQ2d at 1698; *Inamed,* 249 F.3d at 1359, 58 USPQ2d at 1776; *Red Wing,* 148 F.3d at 1358, 47 USPQ2d at 1194. Because the issue of personal jurisdiction in a declaratory action for patent invalidity and noninfringement is intimately related to patent law, personal jurisdiction over Count III is governed by the law of this circuit. *Deprenyl,* 297 F.3d at 1348, 63 USPQ2d at 1708; *Hildebrand,* 279 F.3d at 1354, 61 USPQ2d at 1698 *Graphic Controls Corp. v. Utah Med. Prods.,* 149 F.3d 1382, 1385, 47 USPQ2d 1622, 1625 (Fed.Cir.1998). But personal jurisdiction over Counts I and II is not governed by our law. Because the issue of personal jurisdiction with respect to non-patent counts is not intimately linked to patent law, we apply the law of the regional circuit, here the Eighth Circuit. *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 857, 50 USPQ2d 1304, 1307 (Fed.Cir.1999).

▉ Because the parties have not conducted discovery, the plaintiff needed "only to make a prima facie showing" that the defendants were subject to personal jurisdiction. *Deprenyl,* 297 F.3d at 1347, 63 USPQ2d at 1706 *Graphic Controls,* 149 F.3d at 1383 n. 1, 47 USPQ2d at 1623 n. 1. As such, the pleadings and affidavits are to be "construe[d] . . . in the light most favorable to" the plaintiff. *Id.* We review the district court's legal conclusion without deference. *Hildebrand,* 279 F.3d at 1354,

61 USPQ2d at 1698; *Graphic Controls,* 149 F.3d at 1384, 47 USPQ2d at 1624.

## II

▉ Due process requires that, for the forum state's exercise of personal jurisdiction to be proper, the out-of-state defendant have "minimum contacts" with the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) As the Supreme Court explained in *International Shoe,*

> Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

326 U.S. at 316, 66 S.Ct. 154 (internal citation omitted). The Eighth Circuit applies this test virtually unchanged, *see Oriental Trading Co. v. Firetti,* 236 F.3d 938, 943 (8th Cir.2001), as do we, *see Deprenyl,* 297 F.3d at 1350–51, 63 USPQ2d at 1709.

## III

▉ The parties here focus most of their attention on Count III of the complaint, which seeks a declaratory judgment of patent invalidity with respect to Strong's '698 patent. The plaintiff has properly alleged federal subject matter jurisdiction with respect to this count under 28 U.S.C. § 1331. However, under our decisions, there is no personal jurisdiction with respect to this count standing on its own. This court has held that whether an exercise of personal jurisdiction satisfies due process in a patent case depends on three factors:

(1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair".

*Inamed,* 249 F.3d at 1360, 58 USPQ2d at 1776 (citing *Akro Corp. v. Luker,* 45 F.3d 1541, 1545, 33 USPQ2d 1505, 1508 (Fed. Cir.1995)). We explained in *Inamed* that "[t]he first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." 249 F.3d at 1359, 58 USPQ2d at 1776; *accord Deprenyl,* 297 F.3d at 1351, 63 USPQ2d at 1710.

We have decided that under the third of these tests the sending of letters threatening infringement litigation is not sufficient to confer personal jurisdiction. We provided a comprehensive rationale in *Red Wing.* That case explains that, even though the letters are "purposefully directed" at the forum and the declaratory judgment action "arises out of" the letters, letters threatening suit for patent infringement sent to the alleged infringer by themselves "do not suffice to create personal jurisdiction" because to exercise jurisdiction in such a situation would not "comport with fair play and substantial justice." *Id.* at 1359–60, 47 USPQ2d at 1195–96 (citation omitted); *accord Hildebrand,* 279 F.3d at 1356, 61 USPQ2d at 1700 (holding that letters warning of potential infringement to customers of plaintiff did not satisfy due process); *Inamed,* 249 F.3d at 1361, 58 USPQ2d at 1777. For the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be "other activities" directed at the forum and related to the cause of action besides the letters threatening an infringement suit. *Inamed,* 249

F.3d at 1361, 58 USPQ2d at 1777 (quoting *Genetic Implant Sys., Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1458, 43 USPQ2d 1786, 1789 (Fed.Cir.1997)). Exclusive license agreements with respect to the patents at issue with residents of the forum, for example, have, at least in some circumstances, been held sufficient to confer personal jurisdiction. *Inamed,* 249 F.3d at 1361, 58 USPQ2d at 1777; *Genetic Implant Sys.,* 123 F.3d at 1458, 43 USPQ2d at 1789; *Akro,* 45 F.3d at 1546, 33 USPQ2d at 1509.

The plaintiff here has not alleged other sufficient activities related to the claim of patent non-infringement and invalidity. The letters Strong Industries and Brooks Strong sent to the plaintiff and the plaintiff's customers, along with the news release, only, in the words of the plaintiff's own complaint, "if not directly, impliedly," threaten an action for patent infringement. (Compl. at 7.) The plaintiff also points to the injunction Strong Industries and Brooks Strong obtained and the "threats" in the letters of fines and imprisonment. But the injunction was obtained for misappropriation of trade secrets and does not concern the '698 patent, which was assigned to Brooks Strong, not the Texas defendants or Silent Drive. The activities cannot confer independent personal jurisdiction over Count III. The plaintiff also adverts to the defendants' other contacts with Iowa, but these were sporadic and do not concern the '698 patent. There is thus no personal jurisdiction over the defendants with respect to Count III, standing by itself.

IV

■ However, the complaint here contains two other counts. Count II asserts that the letters that Strong Industries sent the plaintiff's customers "constitute tor-

tious interference with actual and prospective contractual relationships, and as such constitute tortious conduct, which will continue unless enjoined by this Court." *Id.* at 7–8.

The district court had no independent subject matter jurisdiction over Count II. If Count II had alleged diversity of citizenship or federal question jurisdiction based on the Lanham Act, 15 U.S.C. § 1501 *et seq.*, plaintiffs might well be correct as to the existence of subject matter jurisdiction. But the complaint makes no mention of diversity jurisdiction or the Lanham Act. Indeed, in its brief to this court, the plaintiff characterized Count II as a "common law claim for tortious interference" that "arises under 28 U.S.C. § 1367," *i.e.,* supplemental jurisdiction. (Appellant's Br. at 1.) There was no independent federal subject matter jurisdiction over Count II, and we need not reach the question of personal jurisdiction with respect to this count.

## V

■■■ Count I asks for a declaratory judgment that "[p]laintiff, as a non-party to the Texas case, and a person who was not notified, on whom process was not served, and over whom jurisdiction was not present is not and cannot be bound by the injunction entered by the State Court

in Texas." (Compl. at 7.) The plaintiff has properly alleged federal subject matter jurisdiction over Count I. The plaintiff made clear in its complaint that its claims arose in part under federal question jurisdiction, (Compl. at 3), which includes "all civil actions arising under the Constitution." 28 U.S.C. § 1331 (2000). Although it does not mention a source of law, a fair reading of Count I discloses a claim that the Texas state court's attempt to exercise jurisdiction over the plaintiff violated federal due process because the plaintiff was "a non-party to the Texas case, and a person who was not notified, on whom process was not served, and over whom jurisdiction was not present." (Compl. at 7).[2]

■■■ The plaintiff has also properly alleged personal jurisdiction over the defendants with regard to Count I. In determining specific personal jurisdiction over a declaratory judgment action, the question is whether the defendant's contacts with the forum "arise[ ] out of" or "relate[ ] to" the underlying controversy. *See Burger King*, 471 U.S. at 472–73, 105 S.Ct. 2174. "In judging minimum contacts," the Supreme Court has held, the "proper[ ] focus [is] on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (internal cita-

---

**2.** We do not decide whether the Anti–Injunction Act, 28 U.S.C. § 2283, bars Count I. That act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* The Anti–Injunction Act applies to declaratory judgments if those judgments have the same effect as an injunction. *Cal. v. Randtron*, 284 F.3d 969, 975 (9th Cir.2002); *Thiokol Chem. Corp. v. Burlington Indus.*, 448 F.2d 1328, 1332 (3d Cir.1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972).

The Anti–Injunction Act does not apply, however, if the plaintiff was a "stranger[ ] to the state court proceeding." *County of Imperial v. Munoz*, 449 U.S. 54, 59, 101 S.Ct. 289, 66 L.Ed.2d 258 (1980). A stranger to the state court proceeding is one who is not bound as a party or as a privy. *Casa Marie, Inc. v.Super. Ct. of P.R.*, 988 F.2d 252, 264 (1st Cir.1993); *United States Steel Corp. Plan for Employee Ins. Benefits v. Musisko*, 885 F.2d 1170, 1179 (9th Cir.1989); *Munoz v. County of Imperial*, 667 F.2d 811, 814–15 (9th Cir.) (on remand from Supreme Court), *cert. denied*, 459 U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982).

tion omitted). Here the underlying conduct is sufficiently connected to the forum. In *Calder*, the Supreme Court held that personal jurisdiction over defendants who had never set foot in the forum was proper because the allegedly libelous "article was drawn from" sources within the forum state, and "the brunt of the harm ... was suffered in" the forum. *Id.* at 788–789, 104 S.Ct. 1482. "In sum," the forum "is the focal point both of the story and of the harm suffered." *Id.* at 789, 104 S.Ct. 1482. Even though the respondents in *Calder* did not themselves publish the article in the forum state, "their intentional, and allegedly tortious, actions were expressly aimed at" the forum, and "they knew [it] would have a potentially devastating impact" there. *Id.*

Here the alleged actions of the defendants are similar for the purposes of personal jurisdiction to the allegations in *Calder*. Count I specifically incorporated paragraphs 13–19 of the complaint. Paragraph 13 alleged that the defendants had secured the injunction in Texas state court, and paragraph 14 alleged:

> Plaintiff was not a party to that litigation, was not served process in the litigation, did not testify in the litigation, was not an is not subject to service of process within the State of Texas, and as such, there is not now and was not then jurisdiction over Plaintiff.

(Compl. at 5.) Paragraph 16 alleged:

> On or about December 5, 2000, Plaintiff received notice from Patent Attorney D. Arlon Groves, asserting that the specific language of the injunction in the Texas litigation prohibits Silent Drive and its Iowa division from having anything whatsoever to do with the MAXLE,

> threatening that if Plaintiff did not abide by the injunction, the possible consequences to Plaintiff could be monetary fines and imprisonment of the officers of Plaintiff.

*Id.* Thus, the allegations were that Strong Industries and Brooks Strong asked the Texas state court to enjoin Silent Drive from producing the MAXLE, and that Silent Drive was specifically named in the injunction, as was the location of its headquarters. Strong Industries and Brooks Strong allegedly sent letters to Silent Drive and its customers in which they detailed the serious consequences of disobeying the injunction. In the letter to Silent Drive, Strong Industries and Brooks Strong allegedly said one of their purposes in writing was to "ensure that Silent Drive receives actual notice of [the] Final Judgment and injunction," thereby allegedly making it effective. Strong Industries and Brooks Strong also allegedly issued a news release describing the effects of the injunction. Count I concludes by specifying that "there is therefore a real case or controversy between the Plaintiff and the Defendants over *the effect* of the State Court Texas injunction on Plaintiff." (Compl. at 7 (emphasis added)). Silent Drive then requests that the court "order that Plaintiff *is not bound* by the State Court injunction of Texas." *Id.* (emphasis added). Thus, Silent Drive has specifically pled that the defendants' activities with respect to the enforcement of the Texas injunction were all "expressly aimed" at Iowa, and that Strong Industries and Brooks Strong "knew" the activities "would have [the] potentially devastating effect[s]" of inhibiting Silent Drive from producing the MAXLE and its customers from buying it. *See Calder*, 465 U.S. at 789, 104 S.Ct. 1482.[3]

---

**3.** We thus disagree with the district court's finding that the defendant's activities "were [not] uniquely or expressly aimed at Iowa" and "that the brunt of the harm was [not] suffered in Iowa, much less that defendants

Indeed, there would appear to be no other purpose in sending the injunction to Silent Drive than inhibiting Silent Drive from producing the MAXLE, and Strong Industries and Brooks Strong admit as much in their brief, which notes that "any party on notice of the injunction seemingly would have been hesitant to purchase a M[AXLE] from Silent Drive." (Appellees' Br. at 16).[4]

Applying the rationale of *Calder* to the circumstances of defendants' attempted enforcement of the Texas injunction (naming Silent Drive) against Silent Drive in Iowa is in accordance with Eighth Circuit precedent. In *Oriental Trading,* the Eighth Circuit held that there was personal jurisdiction over the defendants, who were not residents of the forum, when they had a contractual relationship with the in-state plaintiffs and had made representations, by telephone and fax from out of state, that constituted fraud. 236 F.3d at 943. "By purposely directing their fraudulent communications at residents of [the forum], the defendants should have realized that the brunt of the harm would be felt there, see *Calder,* 465 U.S. at 789–90, 104 S.Ct. 1482 and they should have reasonably anticipated being haled into court there." *Id.* See also *Dakota Indus., Inc. v.*

*Dakota Sportswear, Inc.,* 946 F.2d 1384, 1391 (8th Cir.1991) (Personal jurisdiction over out-of-state defendant existed with respect to a trademark infringement claim when the defendant's products that allegedly infringed plaintiff's trademark had been shipped to forum state from out of state, which, "along with the fact that [the plaintiff's] principal place of business is in [the forum state], demonstrates that [the defendant's] actions were uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there, as required by *Calder*").[5]

The precedent of other circuits also supports our holding that the *Calder* test is satisfied in the circumstances presented here. *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1087 (9th Cir.2000) (opinion of Schroeder, J., for the panel as to the legal analysis) (The *Calder* test was "satisfied when the defendant [wa]s alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant kn[ew] to be a resident of the forum state."); *Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998) (Registration of Internet domain name coupled with scheme to extort money from trademark holder, a Delaware corporation conducting most of its business

knew it would be suffered there." *Silent Drive,* slip op. at 17 n. 7.

**4.** Of course, the plaintiff here does not allege that securing and enforcing the injunction constituted a tort. However, *Calder* is not limited to torts but rather encompasses all cases in which "the brunt of the harm ... was suffered in" the forum, and the forum "is the focal point both of the" defendant's actions "and of the harm suffered." *Calder,* 465 U.S. at 788–89, 104 S.Ct. 1482.

**5.** In *Hicklin Engineering v. Aidco, Inc.,* 959 F.2d 738 (8th Cir.1992), by contrast, the Eighth Circuit held that in an action for intentional interference with prospective business advantage there was no personal jurisdiction over an out-of-state corporation that had done

no more than send letters advertising its products (and incidentally denigrating the plaintiff's) to corporations that were out of state. The court held that in this situation, the defendant's "actions were [not] targeted to have an effect in" the forum state, as required by *Calder. Id.* "When a business seeks to promote its products and solicit the customers of its competitors," the court pointed out, "it necessarily wishes to have customers believe that its products are superior and to place its competitor's products in a less favorable light." *Id.* The court concluded that while the letters in *Hicklin Engineering* "may have an effect" in the forum state, "absent additional contacts, this effect alone will not be sufficient to bestow personal jurisdiction." *Id.*

in California, constituted sufficient contacts with forum California to satisfy *Calder.*); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir.1997) ("[T]here can be no serious doubt after *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79·L.Ed.2d 804 (1984), that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor."); *Indianapolis Colts, Inc. v. Metro. Balt. Football Club Ltd. P'ship.*, 34 F.3d 410, 411–12 (7th Cir.1994) (Use of in-state company's trademark by out-of-state entity creates personal jurisdiction because "the injury will be felt mainly in" the forum.).

In this circuit, we have repeatedly held that the sending of infringement letters would satisfy the minimum contacts requirement of due process except for policy considerations unique to the patent context. In *Red Wing*, we explained that "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." 148 F.3d at 1360–61, 47 USPQ2d at 1196; *accord Hildebrand*, 279 F.3d at 1356, 61 USPQ2d at 1699; *Inamed*, 249 F.3d at 1361, 58 USPQ2d at 1777. The patent system has national application. If infringement letters created jurisdiction, the patentee could be haled into court anywhere the letters were sent. No such countervailing policy exists with regard to state court injunctions, which are designed to operate primarily in the forum. Seeking to extend the injunction's effect beyond the boundaries of the forum is not an activity that merits special protection, and no case has been called to our attention that suggests otherwise.

## VI

■ Having determined that the district court had personal jurisdiction here with respect to Count I, we must now decide whether the district court also had personal jurisdiction with respect to the other two counts under the supplemental jurisdiction statute (28 U.S.C. § 1367(a)), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This statute confers supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the "same case or controversy" requirement is satisfied. *Inamed*, 249 F.3d at 1362–63, 58 USPQ2d at 1778. *See also* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3523.1 (2002). The Supreme Court has held that such claims must arise out of "a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *accord Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1039 (8th Cir. 1999). The other two counts satisfy this test since, like Count I, they concern the efforts of Strong Industries and Brooks Strong to prevent Silent Drive from manufacturing the MAXLE. *Inamed*, 249 F.3d at 1362–63. *See also* 13 Wright & Miller, *supra*, § 3523.1.

## CONCLUSION

For the foregoing reasons, we hold that personal jurisdiction exists with respect to the three counts and reverse and remand for further proceedings consistent with this opinion.

## COSTS

No costs.

*REVERSED AND REMANDED.*