# United States Court of Appeals for the Federal Circuit

05-1440

PENNINGTON SEED, INC.
and AGRESEARCH LIMITED,

Plaintiffs-Appellants,

v.

PRODUCE EXCHANGE NO. 299,
ALLIED SEED, L.L.C., and FFR COOPERATIVE,

Defendants,

and

UNIVERSITY OF ARKANSAS, GARY C. GEORGE, B. ALAN SUGG,
JOHN A. WHITE, and CHARLES P. WEST,

Defendants-Appellees.


Mark Murphey Henry, Henry Law Firm, of Fayetteville, Arkansas, argued for plaintiffs-appellants. With him on the brief was Nathan P. Chaney.

T. Scott Varady, Office of the General Counsel, University of Arkansas, of Fayetteville, Arkansas, argued for defendants-appellees. With him on the brief was William Reid Kincaid.

Appealed from: United States District Court for the Western District of Missouri

Senior Judge Scott O. Wright

# United States Court of Appeals for the Federal Circuit

05-1440

PENNINGTON SEED, INC.
and AGRESEARCH LIMITED,

Plaintiffs-Appellants,

v.

PRODUCE EXCHANGE NO. 299,
ALLIED SEED, L.L.C., and FFR COOPERATIVE,

Defendants,

and

UNIVERSITY OF ARKANSAS, GARY C. GEORGE, B. ALAN SUGG,
JOHN A. WHITE, and CHARLES P. WEST,

Defendants-Appellees.

_____

DECIDED:  August 9, 2006

_____


Before RADER, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

Opinion for the Court filed by <u>Circuit Judge</u> GAJARSA. Concurring Opinion filed by <u>Circuit Judge</u> SCHALL.

GAJARSA, <u>Circuit Judge</u>.

Pennington Seed, Inc. and AgResearch Limited (collectively "Pennington"), the patentees, originally filed suit against the University of Arkansas ("the University")[1] for infringement and conversion of U.S. Patent No. 6,111,170 ("the '170 patent"). The United States District Court for the Western District of Missouri dismissed the Original Complaint due to the University's Eleventh Amendment immunity. Pennington Seed, Inc. v. Produce Exch. No. 299, No. 04-4194-CV-C (W.D. Mo. Nov. 29, 2004) ("November Order"). Concurrent with that dismissal, the court granted Pennington's motion to file its First Amended Complaint against Gary George, the Chairman of the Board for the University System; B. Alan Sugg, President of the University System; John White, Chancellor of the University of Arkansas at Fayetteville; and Charles West, a professor at the University (collectively "the University Officials") for infringement of the '170 patent, deprivation of federal rights, and conversion. The district court subsequently dismissed the First Amended Complaint based on Eleventh Amendment immunity and lack of personal jurisdiction. Pennington Seed, Inc. v. Produce Exch. No. 299, No. 04-4194-CV-C (W.D. Mo. June 1, 2005) ("June Order"). Pennington now appeals the court's dismissal of both complaints. We affirm.

## I.    BACKGROUND

The '170 patent claims a type of non-toxic fescue grass that does not adversely affect livestock that graze upon it. AgResearch developed the grass and received the '170 patent on August 29, 2000. It then licensed the patent to Pennington, which markets it as MAXQ.

---

[1]    Pennington Seed also filed suit against Produce Exchange No. 299, Allied Seed, and the FFR Cooperative who have since been dismissed from the suit by stipulation.

As alleged in the First Amended Complaint, all the University Officials reside in Arkansas. Pennington alleged in the Original Complaint and First Amended Complaint that the University and all four of the University Officials "are actively growing, marketing, offering for sale, promoting and selling a product containing" Pennington's patented product. It further alleged that the University and University Officials "infringed and continue to infringe . . . the claims of the '170 patent." In addition to the infringement allegations, the First Amended Complaint alleged a deprivation of federal patent rights against the University Officials in their "capacity as employees of the University of Arkansas."

On September 17, 2004, the University filed a motion to dismiss the Original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(3) and (b)(6). The November Order granted the University's motion and dismissed the complaint for failure to state a claim upon which relief can be granted because the Eleventh Amendment barred the action against the University in federal court.

On February 4, 2005, the University Officials filed another motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(2), (b)(3) and (b)(6). The June Order granted the motion and dismissed George, Sugg, and White because Pennington's First Amended Complaint failed to allege a causal connection between those "official[s] and the enforcement or threatened enforcement of an act," under Ex parte Young, 209 U.S. 123 (1908), and failed to establish personal jurisdiction by minimum contacts with the State of Missouri. June Order at 5, 7-8. The court dismissed Pennington's claims against West because the allegations failed to establish personal jurisdiction by minimum contacts with the State of Missouri.

05-1440                                    3

Pennington filed a timely appeal in this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II.    DISCUSSION

### A. Standard of Review

We review personal jurisdiction issues in a patent infringement case under Federal Circuit law.  See Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194, 1201 (Fed. Cir. 2003).    Likewise, questions of Eleventh Amendment immunity for patent infringement claims are reviewed under Federal Circuit law.  See Regents of the Univ. of N.M. v. Knight, 321 F.3d 1111, 1123-24 (Fed. Cir. 2003) ("[T]he question of Eleventh Amendment waiver is a matter of Federal Circuit law.").

A district court's grant of a motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction is a question of law that we review de novo.  See Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr., 382 F.3d 1324, 1326-27 (Fed. Cir. 2004); Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348-49 (Fed. Cir. 2003).  In reviewing the decision, we accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in its favor.  See id. at 1349.  In a complaint involving state officials, we must determine the capacity in which an official has been sued from the course of proceedings below.  See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985).

### B. Eleventh Amendment Immunity

#### 1.    Abrogation of State Immunity

The Eleventh Amendment to the United States Constitution limits the judicial authority of the federal courts and prevents citizens from bringing suit against a state in

a federal court without its consent. <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 267-68 (1997); <u>see also</u> <u>Hans v. Louisiana</u>, 134 U.S. 1, 17 (1890). While Congress may abrogate, under certain circumstances, a state's Eleventh Amendment immunity under Section 5 of the Fourteenth Amendment, <u>see</u> <u>Tennessee v. Lane</u>, 541 U.S. 509, 518 (2004), it may not do so under its Article I Commerce Clause power in patent cases, <u>see</u> <u>Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank</u>, 527 U.S. 627, 647-48 (1999).

In <u>Florida Prepaid</u>, the Supreme Court held that Congress did not have the authority under Article I, Section 8 of the Constitution to abrogate state sovereign immunity. The amendment to the Patent Act that abrogated state sovereign immunity, 35 U.S.C. §§ 271(h), 296(a) ("Act"), did not reflect any Congressional findings upon which Congress could base the abrogation of the Eleventh Amendment sovereign immunity of the states pursuant to the Fourteenth Amendment. The Act merely served as a uniform remedy for patent holders against states instead of a remedy for constitutional violations, such as where a state provides inadequate or no state court remedies. <u>Fla. Prepaid</u>, 527 U.S. at 646-47. The infringement of a patent by a state may be actionable in federal courts "only where the State provides no remedy, or only inadequate remedies, to injured patent owners for its infringement of their patent." <u>Id.</u> at 643. The Act's legislative history in <u>Florida Prepaid</u>, however, provided no factual premise that Congress was attempting to remedy Fourteenth Amendment violations. <u>Id.</u> at 642. The Court noted that the State of Florida provided various alternative remedies to recover for patent infringement, such as a legislative remedy through a claim for payment or a judicial remedy through a takings or conversion claim against the state.

Id. at 644 n.9. Congress's failure to consider these available state remedies and their constitutional adequacy provided inadequate support for Congressional abrogation of the state's Eleventh Amendment sovereign immunity under Section 5 of the Fourteenth Amendment. The Supreme Court has reasoned that Section 5 of the Fourteenth Amendment is designed to remedy existing and widespread conditions of unconstitutional behavior by the states and cannot be used to prevent perceived abuses, absent particularized findings of state violations of constitutionally protected rights. Id. at 637-41; see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 81 (2000) (rejecting the Age Discrimination in Employment Act's grant of jurisdiction because Congress lacked the authority under Section 5 of the Fourteenth Amendment to abrogate state sovereign immunity where the remedy failed the proportionality and congruence test of City of Boerne v. Flores, 521 U.S. 507, 520 (1997)).

Pennington submits that the University and the University Officials are subject to suit under the Eleventh Amendment because "the State of Arkansas provides no adequate remedies to patent infringement." Pennington relies on our decision in Xechem that it purports to be a "template" for our court to abrogate state immunity for patent infringement under the Fourteenth Amendment.[2]

---

[2] Pennington argues that it was error to dismiss the complaint against the University before considering its First Amended Complaint that added an additional count for deprivation of federal patent rights. In Pure Country, Inc. v. Sigma Chi Fraternity, the Eighth Circuit held that it was plainly erroneous for the district court to ignore a motion to amend when it grants a motion to dismiss, then moot the motion to amend citing its own grant of the motion to dismiss. 312 F.3d 952, 956 (8th Cir. 2002). The Pure Country court did not establish a rule that amended complaints would necessarily moot previous motions to dismiss. Regardless, in this case the district court did reconsider the motion to dismiss, found that it was not moot and reaffirmed its decision to dismiss on Eleventh Amendment grounds. A motion for reconsideration is a procedural issue we review under Eighth Circuit law, see Bowling v. Hasbro, Inc., 403

05-1440                                6

In Xechem, we noted that Florida Prepaid requires a showing "that the state action 'left [the patentee] without a remedy under state law,'" 382 F.3d at 1332; however, such a showing is predicated upon Congress's abrogation of Eleventh Amendment sovereign immunity. As specifically explained in Florida Prepaid, it is the Congress, not this court, that can abrogate Eleventh Amendment sovereign immunity for patent infringement, pursuant to Section 5 of the Fourteenth Amendment, if there is a showing that state remedies were insufficient and violated due process. 527 U.S. at 642-43, 646-47; see also Chew v. Cal., 893 F.2d 331, 336 (Fed. Cir. 1990).

Here, Pennington alleged in its complaint that the Arkansas Claims Commission is the only body allowed to hear claims against the state, but that it could not issue injunctions, conduct discovery, or issue a monetary award over $10,000. Pennington, however, fails to allege or explain how Congress made the specific finding that these state procedures are so inadequate that it abrogated state sovereign immunity to allow a patent infringement claim to be filed in federal court. Without such a finding, abrogation would be suspect under Florida Prepaid.

Although the district court found that there was no state forum in which to contest patent infringement claims, it did not find that other available remedies pursuant to state law were so insufficient that they violated the Fourteenth Amendment. In fact, Pennington's First Amended Complaint inherently recognizes the sufficient state remedies acknowledged in Florida Prepaid. Namely, the complaint notes that the State

F.3d 1373, 1375 (Fed. Cir. 2005), for an abuse of discretion, see Brooks v. Ferguson-Florissant Sch. Dist., 113 F.3d 903, 904-05 (8th Cir. 1997). Under the circumstances, the district court did not abuse its discretion by dismissing the motion for reconsideration.

legislature may consider claims and appropriate monetary awards greater than $10,000 (a legislative remedy), and it alleges that the state remedy for conversion (a judicial remedy) may be available. See Fla. Prepaid, 527 U.S. at 644 n.9. Moreover, Arkansas law allows other forms of relief aside from the Claims Commission. See, e.g., Austin v. Ark. State Highway Comm'n, 895 S.W.2d 941, 943 (Ark. 1995) ("[L]andowner, claiming a taking of property, may either seek prospective injunctive relief in chancery court or damages from the State Claims Commission."); Cammack v. Chalmers, 680 S.W.2d 689 (Ark. 1984) (allowing injunctive relief for State acts that are illegal, unconstitutional or ultra vires). While these remedies may be "uncertain" or "less convenient," or may "undermine the uniformity of patent law," these attributes are not sufficient to show that the patentee's due process rights have been violated. Florida Prepaid, 527 U.S. at 644-45; see also Xechem, 382 F.3d at 1332; Jacobs Wind Elec. Co. v. Fla. Dep't of Transp., 919 F.2d 726, 728 (Fed. Cir. 1990).

2. Ex parte Young Action Against the University Officials

Next, Pennington argues that the district court improperly dismissed its claims against George, Sugg, and White, which had been alleged on the basis of the Ex parte Young doctrine.[3] In Ex parte Young, 209 U.S. 123 (1908), railway stockholders filed suit against the Minnesota State Attorney General complaining that a state statute establishing railway rates was unconstitutional. Id. at 127-29. After the district court preliminarily enjoined the enforcement of the statute, the Attorney General violated the injunction, and the court found him in contempt. Id. at 132-34. The Attorney General

---

[3] Pennington does not address the trial court's dismissal of any § 1983 claims due to the suit being brought against the University Officials in their official capacity. As such, we will consider any such claim waived.

appealed under a writ of habeas corpus arguing that a federal court could not enjoin a state official from enforcing the laws of a state due to the sovereign immunity granted to such official derived under the Eleventh Amendment. Id. at 134-36.

The Supreme Court held that if a state official was seeking to enforce an unconstitutional act, he came into conflict with the supreme authority of the Constitution and was thereby stripped of his official capacity; consequently, the state's mantle of sovereign immunity would not be available to insulate his actions. Id. at 159-60; accord Green v. Mansour, 474 U.S. 64, 68 (1985). The Supreme Court has also noted that "[t]o ensure the enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew v. Hawkins, 540 U.S. 431, 437 (2004); accord Green, 474 U.S. at 68; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102-03 (1984); Ex parte Young, 209 U.S. at 155-56, 159. But, these remedies for violations of federal law can only be extended to future injunctive relief, not "retroactive monetary relief." Pennhurst, 465 U.S. at 102-03. To analyze an Ex parte Young claim, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (citing Coeur d'Alene Tribe of Idaho, 521 U.S. at 296).

Thus, continuing prospective violations of a federal patent right by state officials may be enjoined by federal courts under the Ex parte Young doctrine; however, the Eleventh Amendment precludes the plaintiff from obtaining monetary damages from individual defendants in their official capacities. See Graham, 473 U.S. at 169 ("The

Eleventh Amendment bars a damage action against a State in federal court. . . . This bar remains in effect when state officials are sued for damages in their official capacity."). Moreover, this procedure cannot be applied to an action against any random state official. As noted in Ex parte Young, there must be a connection between the state officer and the enforcement of the act or else the suit will merely make him a representative of the state and therefore improperly make the state a party to the suit. 209 U.S. at 157. A nexus between the violation of federal law and the individual accused of violating that law requires more than simply a broad general obligation to prevent a violation. See Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979) (holding the governor or attorney general of a state are not the proper defendants in every action attacking the constitutionality of a state statute merely because they have a general obligation to enforce state laws). When a violation of federal law is alleged, as here, the state official whose actions violate that law is the rightful party to the suit and prospective injunctive relief can only be had against him. See, e.g., Dairy Mart Convenience Stores, Inc. v. Nickel (In re Dairy Mart Convenience Stores, Inc.), 411 F.3d 367, 373 (2d Cir. 2005) (State officials were subject to injunction where they refused to give effect to federal bankruptcy law that extended time deadlines for filing a reimbursement claim. A sufficient nexus was established because the state officers oversaw the fund and distribution of claims.).

Here, the district court found that Pennington failed to allege any causal connection between George, Sugg, or White and the alleged patent infringement. In the First Amended Complaint, Pennington made allegations that the University Officials were engaged in marketing the patented product. Pennington, however, failed to

sufficiently allege how George, White and Sugg were causally connected to the infringement.

Instead, Pennington asserted in its opposition to the motion to dismiss that George, White and Sugg were liable for infringement because, due to their positions at the University, they supervised intellectual property activity. It supported this conclusion through documents and argument included in its opposition brief.[4] Pennington purports that it developed a sufficient nexus by demonstrating the causal connection between the University Officials who were responsible for overseeing the University's patent policy and the patent infringement. Basically, it was alleged that "[s]imply put, all three Defendants have the ability to 'stop an ongoing violation of federal law.'" Plaintiff's Suggestions in Opposition to University Defendants' Motion to Dismiss at 7.

Allegations that a state official directs a University's patent policy are insufficient to causally connect that state official to a violation of federal patent law—i.e., patent infringement. A nexus between the violation of federal law and the individual accused

---

[4] The district court refused to recognize the unsupported assertions of counsel and dismissed the actions against George, Sugg, and White. Under Rule 10(c) of the Federal Rules of Civil Procedure, materials attached to a complaint may be considered as exhibits that are part of the complaint for determining the sufficiency of the pleadings. See Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913 (8th Cir. 2002). However, a court is "under no obligation to resolve the issues in the complaint through materials outside the pleadings." Id.; see also Palda v. Gen. Dynamics Corp., 47 F.3d 872, 875 (7th Cir. 1995) (holding that court would not look beyond the four corners of the complaint to cure defective pleadings). Because, at least as far as George, White and Sugg were concerned, Pennington's First Amended Complaint was inherently defective, the district court properly granted the motion to dismiss.

05-1440                                    11

of violating that law requires more than simply a broad general obligation to prevent a violation; it requires an actual violation of federal law by that individual.  See Frew, 540 U.S. at 437 (holding that the Ex parte Young doctrine applies when state officials act in violation of state law); see also Shell Oil Co., 608 F.2d at 211 (holding that a general obligation to enforce state laws is not a sufficient nexus).  The fact that a University Official has a general, state-law obligation to oversee a University's patent policy does not give rise to a violation of federal patent law.[5]

Essentially, Pennington asks the federal courts to enjoin the University Officials from neglecting their job duties established by state law.  But, a federal court cannot enjoin a state official to perform his or her duty under state law.  Pennhurst, 465 U.S. at 106.  As the Supreme Court has explained,

> [a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.  On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that Young and Edelman are inapplicable in a suit against state officials on the basis of state law.

Id.  A federal court may only enjoin ongoing activity that violates federal law.  To hold otherwise would not only violate the principles of federalism and a state's sovereign immunity, but it would also be akin to a suit against the state itself.  Thus, Pennington's

---

[5]     This is to be distinguished from the factual situation where a state official's refusal to perform a duty is itself a violation of federal law.  See, e.g., Dairy Mart, 411 F.3d at 373 (state officials refusal to process a claim was itself a violation of established federal bankruptcy procedure).  Here, allegations that University Officials failed to supervise intellectual property policy at the school is not an allegation of federal patent infringement and does not retain a sufficient causal connection to the activity.

05-1440                                    12

claims against George, White and Sugg were properly dismissed.

C. Personal Jurisdiction

Additionally, the district court found that regardless of Pennington's insufficient Ex parte Young claims, the First Amended Complaint lacked allegations that the University Officials had sufficient minimum contacts that subjected them to the reach of the Missouri long-arm statute. Pennington argues that it made sufficient allegations to support a prima facie case of personal jurisdiction that at least entitles it to a jurisdictional hearing. As in its Ex parte Young claims, Pennington relies on the exhibits and allegations made in response to the Motion to Dismiss.

We review personal jurisdiction issues in a patent infringement case under Federal Circuit law. See Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194, 1201 (Fed. Cir. 2003). To establish specific personal jurisdiction in Missouri, Pennington must meet two requirements. First, jurisdiction over the University Officials must be allowed under the Missouri long-arm statute. See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1361 (Fed. Cir. 2006); Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005); Silent Drive, 326 F.3d at 1200; Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir. 2002); Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations, 297 F.3d 1343, 1349-50 (Fed. Cir. 2002); Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001); see also Fed. R. Civ. Pro. 4(k)(1)(A). Second, if such jurisdiction exists, we must determine whether its exercise comports with due process. Breckenridge Pharm., Inc., 444 F.3d at 1361. Because both parties concede that Missouri's long-arm statute extends to the bounds of the due process clause, see State ex rel. K-Mart Corp. v. Hollinger, 986 S.W.2d 165, 167-68 (Mo. 1999),

05-1440                                    13

our inquiry reduces to a due process analysis, see Trintec Indus., Inc., 395 F.3d at 1279.

The due process analysis requires the nonresident defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Coyle, 340 F.3d at 1350 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (quotation marks omitted). A court's consideration of minimum contacts generally involves three inquiries: "whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Id.

In this case, the district court did not hold an evidentiary hearing on the issue of personal jurisdiction. Therefore, Pennington need only make a prima facie case of personal jurisdiction, and we "must accept the uncontroverted allegations in [its] complaint as true." Coyle, 340 F.3d at 1349.

In Coyle, we held there was a prima facie case of personal jurisdiction against a Nevada patentee in the State of California. 340 F.3d at 1351. There, we noted that the patentee purposefully directed his activity toward California when (1) he hired a California patent lawyer that contacted the opposing party frequently to update them on the status of the patent application, (2) the patentee telephoned the opposing party regarding the subject matter of the patent frequently, and (3) two of the patentee's representatives visited the opposing party to demonstrate the invention. Id. at 1350-51. We further held that these contacts with California arose out of the claims underlying the declaratory judgment action regarding patent validity. Id. at 1351. Last, we held that

forcing the patentee to litigate in the adjoining state did not impose unreasonable burdens upon him. Id. at 1351-52.

Here, Pennington has made no allegation that the University Officials had minimum contacts with the State of Missouri. Notably, the only place the word "Missouri" is used within the First Amended Complaint is in reference to the Produce Exchange No. 299 corporation that was organized in Missouri and is no longer a party to this action. Furthermore, the complaint only alleges that the University Officials reside in Arkansas, not Missouri. Even if their residence is within 60 miles of the Missouri border, as Pennington states in its brief to this court, such a fact does not demonstrate activities directed at Missouri or claims arising out of activities in Missouri. On its face, the complaint lacks sufficient allegations of minimum contacts to establish personal jurisdiction. Thus, the district court did not err by dismissing the First Amended Complaint for lack of personal jurisdiction.

## III. CONCLUSION

Pennington appeals to us for review of the district court's dismissal of Pennington's patent infringement and conversion claims against the University and University Officials. For the reasons we have already stated, the district court properly found that Pennington's claims were barred by the Eleventh Amendment and that Pennington failed to allege personal jurisdiction over the University Officials. Accordingly, we affirm.

## AFFIRMED

05-1440                              15

# United States Court of Appeals for the Federal Circuit

05-1440

PENNINGTON SEED, INC.
and AGRESEARCH LIMITED,

Plaintiffs-Appellants,

v.

PRODUCE EXCHANGE NO. 299,
ALLIED SEED, L.L.C., and FFR COOPERATIVE,

Defendants,

and

UNIVERSITY OF ARKANSAS, GARY C. GEORGE, B. ALAN SUGG,
JOHN A. WHITE, and CHARLES P. WEST.

Defendants-Appellees.

SCHALL, Circuit Judge, concurring.

I am in full agreement with, and therefore join, Parts II B1 and II C of the court's opinion. In those parts of the court's opinion, Judge Gajarsa explains in a well-reasoned fashion (i) why the University's Eleventh Amendment immunity from suit was not abrogated and (ii) why the district court lacked personal jurisdiction over the four University Officials. I would affirm the judgment of the district court on those grounds and would not reach the question—discussed in Part II B2 of the court's opinion—of

whether the doctrine set forth in <u>Ex parte Young</u>, 209 U.S. 123 (1908), applies to University Officials Gary C. George, B. Alan Sugg, and John A. White.