NEW STAR LASERS, INC., and Laser Aesthetics, Inc., Plaintiffs,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., Defendants.

No. Civ. S99–428WBS/PAN.

United States District Court, E.D. California.

Aug. 27, 1999.

Dale Curtis Campbell, Weintraub Genshlea and Sproul, Sacramento, CA, for New Star Laser Inc., Laser Aesthetics Inc., plaintiffs.

Beth Ann McGowen, Neal Andrew Rubin, McCutchen Doyle Brown and Enersen, Palo Alto, CA, for Regents of the University of California, Beckman Laser Institute and Medical clinic, defendants.

Stephen John Burns, Stevens and O'Connell, Sacramento, CA, Scott A. Birnbaum, Joseph A. Capraro, Richard Myrus, Allan B. Urgent, Testa Hurwitz and Thibeault, Boston, MA, for Candela Corporation, defendant.

Stephen John Burns, Stevens and O'Connell, Sacramento, CA, for Candela Laser Corporation Inc, defendant.

Beth Ann McGowen, McCutchen Doyle Brown and Enersen, Palo Alto, CA, for University of California Office of Technology Transfer, defendant.

### MEMORANDUM AND ORDER

SHUBB, Chief Judge.

Plaintiffs seek a legal judgment that patent no. 5,814,040, owned by the Regents of the University of California, is invalid. Plaintiffs also assert multiple state-law causes of action. The Regents, raising the Eleventh Amendment, move to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See Doe v. Lawrence Livermore National Laboratory*, 131 F.3d 836, 838 (9th Cir.1997) (Regents are an arm of the State).

The Regents own the patent to the disputed Dynamic Cooling Device (DCD) technology. This technology is useful in

conjunction with a laser skin treatment process marketed by plaintiffs. Commencing in 1994, the Regents and plaintiffs attempted to negotiate the sale of a limited-use license in the DCD technology. The parties dispute whether the negotiations ever produced a licensing agreement. While the negotiations did proceed to an option agreement to continue exclusive negotiations, the parties also apparently dispute whether or not plaintiffs exercised the option.

Meanwhile, a disagreement over the technology developed between the Regents and a third party, Candela Corporation. This dispute culminated in an infringement action in federal court in Massachusetts. The Regents ultimately settled that dispute by granting to Candela an exclusive license in the DCD technology—a settlement allegedly in legal conflict with the New Star–Regents negotiations and/or agreements. Candela and plaintiffs then entered in to licensing negotiations of their own. They failed to reach agreement, however, and plaintiffs subsequently filed this suit against both Candela and the Regents.

█ The Eleventh Amendment states:
> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Though styled as an "immunity," the Eleventh Amendment limits the subject-matter jurisdiction of the federal courts. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 53–54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996). It applies to suits arising under either federal or state law, and to those brought in diversity. *See id.* at 1122; *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S.Ct.

900, 79 L.Ed.2d 67 (1984); *see also Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

█ Congress may abrogate Eleventh Amendment immunity pursuant to a grant by the Constitution of authority to do so, such as the Enforcement Clause of the Fourteenth Amendment, if it makes its purpose "unmistakably clear in the language of the statute itself." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Congress may not abrogate Eleventh Amendment immunity pursuant to its powers under Article I of the Constitution. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (overruling *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989)). Moreover, Congress must support any abrogation under the Fourteenth Amendment with specific factual findings demonstrating the necessity of remedying constitutional violations. *See City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

█ Plaintiffs' state-law claims against the Regents must be dismissed. *Pennhurst*, 465 U.S. at 121, 104 S.Ct. 900. With respect to plaintiffs' suit for a declaration of non-infringement by reason of patent invalidity, however, because the court finds that immunity has been waived by the acquisition of the instant patent, the motion to dismiss must be denied.[1]

The recently decided companion cases of *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, —— U.S. ——, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), and *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, —— U.S. ——, 119 S.Ct. 2199, ——

---

1. The parties have not raised *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See, e.g., Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183–85 (9th Cir. 1997); *see also Florida v. Seminole Tribe*, 517 U.S. 1133, 1132–1133, 116 S.Ct. 1416, 134 L.Ed.2d 541 (1996).

L.Ed.2d —— (1999) arose from the same underlying dispute. College Savings Bank owned and marketed a patented investment methodology designed to finance the costs of college education. The State of Florida sold a similar product. College Savings Bank brought separate actions against Florida for patent infringement, *Florida Prepaid*, and for false advertising under the Lanham Act, *College Savings Bank*. Florida raised the Eleventh Amendment as a defense to both.

In *College Savings Bank*, the Court first held that the Trademark Remedy Clarification Act ("TRCA") did not validly abrogate Eleventh Amendment immunity from a suit under the Lanham Act. False and misleading advertising by a competitor does not implicate a property interest protected by the Fourteenth Amendment. *Id.* at 2225. The TRCA thus exceeded the authority of Congress to enforce that Amendment.

The Court also considered the doctrine of "constructive waiver" as set out in *Parden v. Terminal Ry. of Ala. Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) (Congress could condition a State's right to operate an interstate railroad on submission to federal suit). Overruling *Parden*, the Court rejected the proposition that Florida had waived its immunity by engaging in ordinary interstate commerce. *College Savings Bank*, —— U.S. at —— ——, 119 S.Ct. at 2226–28. Nor can such a "waiver" be required by Congress as a condition on ordinary commercial activity; to hold otherwise, the Court reasoned, would render the *Seminole Tribe* limitation on the abrogation power a nullity. *Id.* at 2229–30.

■ The Court did, however, confirm that Congress can compel a waiver where the State seeks not merely to engage in "otherwise lawful activity," but rather receives a "gift or gratuity" or "federal beneficence" that Congress may rightfully withhold. *Id.* at 2231. The Court re-affirmed *Petty v. Tennessee–Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), and *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), which held that Congress may require a waiver of State sovereign power as a condition on the approval of an interstate compact, *Petty*, 359 U.S. at 277–78, 79 S.Ct. 785, or on the receipt of federal funds, *Dole*, 483 U.S. at 211–12, 107 S.Ct. 2793. *Cf. Scanlon*, 473 U.S. at 246–47, 105 S.Ct. 3142 (mere receipt of federal funds did not constitute waiver where Congress did not make intent to condition funds on waiver unmistakably clear).

In *Florida Prepaid*, the Supreme Court went on to find that the Patent Remedy Act of 1992 did not validly abrogate the immunity of the States to suits for patent infringement. Unlike a suit for trademark infringement, a patent infringement action does implicate an interest protected under the Fourteenth Amendment, because a patent constitutes property. Congress, however, failed to make sufficient factual findings of infringement by the States to justify abrogation. *Florida Prepaid*, —— U.S. at —— —— ——, 119 S.Ct. at 2210–11 (citing *City of Boerne*, 521 U.S. at 526, 117 S.Ct. 2157). The Court also noted, again, that Florida had not, merely by engaging in interstate commerce, "constructively waived" its immunity under the Eleventh Amendment. *Florida Prepaid*, —— U.S. at —— —— ——, 119 S.Ct. at 2204–05 (citing *College Savings Bank* ).

Thus, after *College Savings Bank* and *Florida Prepaid*, a State engaging in no more than ordinary business activities enjoys a substantial edge over its competitors: total immunity from suit in federal court, an immunity even more impenetrable than that afforded to foreign powers. *See* 28 U.S.C. § 1602 *et seq.* (Foreign Sovereign Immunities Act). Were no more than "otherwise lawful activity" at stake here, this court would have no choice but to grant the Regents' motion to dismiss.

This case, however, concerns the validity of a patent owned by the Regents themselves. Patents constitute a unique form of nationally recognized intellectual property, created by Congress pursuant to its authority under the Patent Clause. U.S. Const. art. I, sec. 8. Unlike a copyright, a patent does not independently spring into existence; it must be sought from the federal Patent and Trademark Office (the "PTO"). In exchange for disclosure of the art, the inventor, and any subsequent owner of the patent, receives an ironclad monopoly for a limited number of years. *See generally,* Lipscomb's Walker on Patents (3d ed.), § 1:9 (1984) (hereinafter "Walker"). The owner receives the benefit of a nationally recognized right governed by nationally uniform laws, and enforceable, indeed solely enforceable, in a national system of courts. 28 U.S.C. § 1338; Federal Courts Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 25 (April 2, 1982) (creating Court of Appeals for the Federal Circuit). Without the judicial enforcement provided by the national government, a patent would have little or no value; without a patent, the possessor of the technology would be forced to conceal the art in reliance on varying·trade secret laws of the several States.

Since the enactment of the Declaratory Judgment Act in 1934, a suit for a declaration of non-infringement has become a significant component of the patent system. *See generally* Walker § 24. The PTO does not subject patents to the level of review and testing available in an adversary proceeding before an Article III court—hence the invalidity defense provided by 35 U.S.C. § 282. Not all patents issued are valid; and the penalties for infringement can be fierce. A suit for declaratory relief prevents a patent holder from capitalizing on this uncertainty by threatening, but never consummating, infringement litigation. *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 814–15 (Fed.Cir. 1996) (quoting *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 734–35 (Fed.Cir.1988) and citing *BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977 (1993)). Amenability to a suit challenging the validity of a patent thus is not only a *quid pro quo*—it is an integral part of the patent scheme as a whole.

The Regents wish to take the good without the bad. The court can conceive of no other context in which a litigant may lawfully enjoy all the benefits of a federal property or right, while rejecting its limitations. The holdings of *Petty, Dole,* and *College Savings Bank* embody this common sense understanding. A patent constitutes a "gift or gratuity" bestowed by the federal government, and if Congress has conditioned its receipt on a waiver of Eleventh Amendment immunity to a declaratory suit, then Congress has acted permissibly.[2] *College Savings Bank,* —— U.S. at ——, ——, 119 S.Ct. at 2231, 2236.

In 1992, Congress enacted the Patent Remedy Act, Pub.L. 102–560, which states in part that "[a]ny State ... shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity." 35 U.S.C. § 271(h). That Act no less constitutes a clear and unmistakable requirement of waiver than did the laws at issue in *Dole* and *Petty.*[3] *College Savings Bank,* ——

---

**2.** On facts materially identical to the instant case, the Federal Circuit found a constructive waiver in *Genentech, Inc. v. Regents of the University of California,* 143 F.3d 1446, 1453 (Fed.Cir.1998), *vacated* —— U.S. ——, 119 S.Ct. 2388, —— L.Ed.2d —— (1999). *Genentech* also suggested in *dictum* that applying for a patent would not constructively waive Eleventh Amendment immunity. *Genentech,* 143 F.3d at 1453, 1454. A vacated opinion has no precedential effect, and the passing statements in *Genentech* have no persuasive force, particularly in light of *College Savings Bank. O'Connor v. Donaldson,* 422 U.S. 563, 577 n. 12, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *League of United Latin American Citizens,* 131 F.3d 1297, 1305 (9th Cir.1997).

**3.** *Dole,* 483 U.S. at 205, 107 S.Ct. 2793 ("[the statute] directs the Secretary of Transportation to withhold a percentage of federal highway funds otherwise allocable from States 'in

U.S. at ——, 119 S.Ct. at 2231; *Scanlon*, 473 U.S. at 247, 105 S.Ct. 3142. The Regents presumably knew of the accompanying waiver when they acquired the patent in question in 1994. The Regents' motion to dismiss on the basis of Eleventh Amendment immunity will therefore be denied.

IT IS THEREFORE ORDERED that with respect to plaintiffs' first claim for declaratory relief, the Regents' motion to dismiss for lack of jurisdiction under the Eleventh Amendment be, and the same hereby is, DENIED, and, that with respect to plaintiffs' state-law claims the motion be, and the same hereby is, GRANTED.

which the purchase of any alcoholic beverage by a person who is less·than twenty-one years of age is lawful' ''); *Petty*, 359 U.S. at 277, 79 S.Ct. 785 ('' '[t]hat nothing contained herein shall be construed to affect, impair, or diminish any right, power, or jurisdiction of the United States or of any court' ''); *see also* *College Savings Bank*, —— U.S. at ——, 119 S.Ct. at 2229 (difference between abrogation and forced waiver is semantic at best) ("Forced waiver and abrogation are not even different sides of the same coin—they are the same side of the same coin").