**XECHEM INTERNATIONAL, INC., Plaintiff–Appellant,**

v.

**THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER and Board of Regents of the University of Texas System, Defendants–Appellees.**

No. 03–1406.

United States Court of Appeals, Federal Circuit.

Aug. 31, 2004.

John P. Luther, Law Office of John P. Luther, of Kent, WA, argued for plaintiff-appellant.

David L. Parker, Fulbright & Jaworski L.L.P., of Austin, TX, argued for defendants-appellees. With him on the brief were Marcy Hogan Greer and Robert E. Hanson, Jr.

Before PAULINE NEWMAN, GAJARSA, and LINN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Xechem International, Inc., a biopharmaceutical company, brought suit against the University of Texas M.D. Anderson Cancer Center and the Board of Regents of the University of Texas System (collectively "the University") in the United States District Court, raising several federal and state counts arising from a collaborative project between Xechem and the University. In response to the complaint the University asserted its Eleventh Amendment and state immunity from suit, and the United States District Court for the Southern District of Texas granted the University's motion to dismiss on the pleadings, Fed.R.Civ.P. 12(b)(6).[1] The only issue on appeal is whether the University is subject to suit in federal court to obtain correction of the inventorship of United States Patents No. 5,877,205 and 6,107,333, the patents flowing from the project.

We affirm the dismissal, for Supreme Court precedent controls the arguments raised by Xechem with respect to waiver or abrogation of the University's Eleventh Amendment immunity.

### Standards of Review

■ The University's motion to dismiss was brought under Fed.R.Civ.P. 12(b)(6) (dismissal for failure to state a claim upon which relief can be granted). When dismissal is on the pleadings, the plaintiff's well-pleaded factual allegations are accepted as true and all reasonable factual inferences are drawn in its favor. See Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (on motion to dismiss on the pleadings, disputed material facts are viewed in the light most favorable to the complainant).

■ Dismissal under Rule 12(b)(6) receives plenary appellate review. Boyle v. United States, 200 F.3d 1369, 1371 (Fed. Cir.2000); Young v. AGB Corp., 152 F.3d 1377, 1379 (Fed.Cir.1998). Matters of con-

---

1. Xechem Int'l, Inc. v. University of Texas M.D. Anderson Cancer Ctr., No. H–02–1013 (S.D.Tex. March 19, 2003).

stitutional law and interpretation also receive plenary review. *Arbon Steel & Serv. Co. v. United States,* 315 F.3d 1332, 1334 (Fed.Cir.2003); *Florida Sugar Mktg. & Terminal Assoc., Inc. v. United States,* 220 F.3d 1331, 1333 (Fed.Cir.2000).

## BACKGROUND

The basic facts are generally undisputed: Xechem and the University in 1995 entered into a Sponsored Laboratory Study Agreement, with financial and technical support by Xechem, for the purpose of developing a pharmaceutical formulation that would enhance the solubility and thereby the effectiveness of the cancer drug paclitaxel. The persons principally involved in the project were Dr. Ramesh C. Pandey, president and CEO of Xechem; Dr. Luben K. Yankov, a scientist employed by Xechem; and Dr. Borje S. Andersson and Dr. Elias Anaissie, scientists employed by the University.

The complaint states that a successful formulation was developed, and that Xechem prepared a patent application naming Dr. Pandey of Xechem and Dr. Andersson of the University as joint inventors, and in early 1996 sent the draft application to the University. The University objected to the designation of inventorship, and on June 28, 1996 the University filed a patent application in the United States Patent and Trademark Office, naming Dr. Andersson as sole inventor. On November 13, 1996 Dr. Pandey wrote to the University as follows:

> Further to our conversation of today, as you have requested I am now forwarding you this letter in which I recognize Dr. Borge S. Andersson, as the sole inventor of the above referenced patent application.
>
> I look forward to receiving Dr. Andersson's comments of the Draft Patent Application and to wrap-up the licensing negotiations concerning the subject matter of the application.

On August 18, 1997 Xechem and the University entered into a Patent and Technology License Agreement whereby Xechem received the exclusive worldwide license to manufacture and market these paclitaxel formulations, and Xechem agreed to pay certain continuing sums and a royalty. Xechem also agreed to pay the costs of obtaining the patents in the United States and foreign countries. The University's patent application issued as the '205 patent on March 2, 1999, and a divisional application, also naming Dr. Andersson as sole inventor, issued as the '333 patent on August 22, 2000. Both patents were assigned by Dr. Andersson to the University.

On February 15, 2000 Xechem was notified that the University considered the License Agreement to have terminated automatically no later then December 31, 1998, due to Xechem's alleged insolvency, and that any use of this technology by Xechem was deemed to be patent infringement. Xechem then filed suit in federal court, presenting several counts sounding in tort and contract and also seeking correction of inventorship and a declaration of non-infringement. Xechem stated that Dr. Pandey made a mistake when he acquiesced in the naming of Dr. Andersson as sole inventor, and asked the court to determine the correct inventorship. Apparently upon the University's claim of sovereign immunity from state as well as federal action, the state law tort and contract counts were withdrawn by Xechem. This appeal relates only to the dismissal, on Eleventh Amendment grounds, of the inventorship correction claim.

## DISCUSSION

The University of Texas is deemed to be an arm of the State of Texas, *see* Tex.Code

§ 441.101(3), and Xechem does not dispute that the University is properly accorded Eleventh Amendment immunity.[2] *See Regents of the Univ. of New Mexico v. Knight,* 321 F.3d 1111, 1124 (Fed.Cir.2003) (recognizing the status of a state university as an arm of the state).

The Supreme Court has addressed Eleventh Amendment immunity as it pertains to violation of federal patent and trademark laws. In *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) the Court invalidated the legislative abrogation of state immunity from suit under these laws. In *Florida Prepaid* the Court ruled that the Eleventh Amendment was violated by the Patent and Plant Variety Protection Remedy Clarification Act of 1992, Pub.L. 102–560, 106 Stat. 4230 (codified at 35 U.S.C. §§ 271(j), 296). In *College Savings* the Court reached the same result with respect to abrogation of immunity by the Trademark Remedy Clarification Act of 1992, Pub.L. 102–542, 106 Stat. 3567 (codified at 15 U.S.C. §§ 1051, 1114, 1122). The Court held that Eleventh Amendment immunity may be abrogated "only where the State provides no remedy, or only inadequate remedies, to injured patent owners for its infringement of their patent could a deprivation of property without due process result," thereby invoking the Fourteenth Amendment. *Florida Prepaid,* 527 U.S. at 643, 119 S.Ct. 2199.

The Court also referred to lack of a "pattern of patent infringement by the States," *id.* at 640, 119 S.Ct. 2199, in suggesting that legislative remedy had not been shown to be necessary.

The Court stressed the exclusive role of the Fourteenth Amendment[3] in abrogation of Eleventh Amendment immunity in *Tennessee v. Lane,* —— U.S. ——, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), where the Court sustained abrogating legislation against constitutional challenge, holding that "Title II [of the Americans with Disabilities Act] unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services." —— U.S. at ——, 124 S.Ct. at 1993. The Court stated:

> Title II—unlike RFRA [the Religious Freedom Restoration Act of 1993, held unconstitutional in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)], the Patent Remedy Act [held unconstitutional in *Florida Prepaid,* 527 U.S. at 647–48, 119 S.Ct. 2199], and the other statutes we have reviewed for validity under § 5—reaches a wide array of official conduct in an effort to enforce an equally wide array of constitutional guarantees.

—— U.S. at ——, 124 S.Ct. at 1992. Although sustaining the authority of Congress under the Fourteenth Amendment to abrogate the states' immunity, the Court made clear that the issues resolved in *Florida Prepaid* were not being reopened. In *Tennessee v. Lane* the Court explained that *Florida Prepaid* had "fur-

---

**2.** Amendment XI. The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

**3.** Amendment XIV. Section 1 .... nor shall any State deprive any person of life, liberty,

or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

ther defined the contours of *Boerne's* 'congruence and proportionality' test," —— U.S. at ——, 124 S.Ct. at 1987, and reiterated that suits against states for patent infringement had not been shown to raise Fourteenth Amendment issues.

Xechem argues that the Eleventh Amendment does not bar an action to correct inventorship under 35 U.S.C. § 256, because the correction of inventorship will change the ownership of the patents, thereby raising property issues cognizable under the due process clause of the Fourteenth Amendment. Xechem also argues that correction of inventorship does not require participation or consent of the owner of the patent, and thus can proceed in federal court despite the University's objection. Xechem further argues that because the University's employee Dr. Andersson applied for and was granted these patents by the United States Patent and Trademark Office, a federal agency, the University consented to federal jurisdiction, at least for correction of the identity of the applicant. Xechem also argues that patents are a gift or gratuity granted by the federal government, and that the University's acceptance of the patents is a waiver of Eleventh Amendment immunity. The University responds that Supreme Court precedent has disposed of all of these theories, and that the complaint was properly dismissed for failure to state a claim upon which relief can be granted.

**A**

■ Xechem argues that the University waived its Eleventh Amendment immunity when it entered into this collaborative research agreement, and further waived its immunity by contracting with Xechem in the License Agreement for purposes of commercial gain. Xechem argues that by entering into these contractual and commercial arrangements the University waived objection to federal court jurisdiction to secure constitutionally protected property rights, and for issues that can be decided only in federal court under preemptive federal statutes.

The University responds that it did not waive its immunity by entering into these arrangements, for any waiver must be express and clear and "altogether voluntary," and cannot be inferred. In *College Savings* the Court explained that waiver of the Eleventh Amendment right to be immune from the authority of federal courts can occur in only two circumstances: first, if the state on its own initiative invokes the jurisdiction of the federal courts; and second, upon a clear declaration by the state of its intent to submit to federal jurisdiction. 527 U.S. at 675–76, 119 S.Ct. 2219. Responding to the argument that sovereign immunity should be deemed waived when a state enters into commercial activity, the Court pointed out that the Eleventh Amendment does not make that distinction, *id.* at 686, 119 S.Ct. 2219, and that such a distinction is inapplicable because "the constitutional role of the States sets them apart from other employers and defendants." *Id.* at 685–86, 119 S.Ct. 2219 (quoting *Welch v. Texas Dep't of Highways & Public Transp.*, 483 U.S. 468, 477, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987)).

Xechem argues that patent law finds its authority in the Constitution, and that no state court can adequately ensure that the federal interest in promoting progress of the useful arts is upheld. Xechem also argues that this case calls for an interpretation of federal law by federal courts, because inventorship is a matter of exclusive federal jurisdiction. However, the Court has dealt definitively with the argument that a state waives its immunity by entering into arrangements controlled by federal law and reviewable only in federal court. In *College Savings* the Court reaf-

firmed the principles of *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) and *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and overruled *Parden v. Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

In *Seminole Tribe* the Court discussed the congressional power to abrogate state immunity by federal statute, and reaffirmed that the Commerce Clause is not a source of such power. In *Parden* the Court had relied on the Commerce Clause to hold that when a state voluntarily enters into federally regulated activity—in *Parden,* operating a railroad—the state is deemed to have consented to federal jurisdiction arising from that activity, in that case an action under the Federal Employers' Liability Act. In overruling *Parden's* constructive waiver, the Court stressed in *College Savings* that a state's waiver of Eleventh Amendment rights cannot be imposed or implied based on a state's entry into commerce, but must be founded on a "clear declaration" by the state of its intent to submit to federal jurisdiction. *Id.* at 675, 119 S.Ct. 2199 (quoting *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944)). Such a declaration was not made by the University in entering into its various relationships and contracts with Xechem.

**B**

■ Xechem also argues that the University constructively consented to federal jurisdiction by causing its employee Dr. Andersson to apply for United States patents. Xechem argues that the University made a clear and voluntary waiver of immunity when it entered the Patent and Trademark Office and sought its legal benefits, and that the University cannot both obtain patents and "hide behind the Constitution." Xechem states that by filing patent applications with a federal agency, accompanied by Dr. Andersson's averral that he is the original and sole inventor, the University consented to correction of such erroneous averral in the only court that, according to Xechem, can order such correction. *See* 35 U.S.C. § 256 ¶ 2:

> § 256. Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

The University states that this statute does not waive state immunity, either expressly or by implication. In *College Savings* the Court negated the argument that a state's voluntary participation in activities controlled by federal statute imposes a consent to suit arising from those activities. The Court stated that "we think where the constitutionally guaranteed protection of the States' sovereign immunity is involved the point of coercion is automatically passed—and the voluntariness of waiver destroyed—when what is attached to the refusal to waive is the exclusion of the State from otherwise lawful activity." 527 U.S. at 689, 119 S.Ct. 2219 (overruling *Parden* ).

Xechem also argues that a state's invocation of the authority of the PTO to grant patents is analogous to the state's invocation of federal authority to enforce its patent rights at state initiative, the latter clearly serving to waive Eleventh Amendment immunity. *See Regents of the University of New Mexico,* 321 F.3d at 1125 (recognizing the "inconsistency and unfairness that could result from allowing a state that voluntarily avails itself of the federal courts to simultaneously claim immunity under the Eleventh Amendment") (citing *Lapides v. Board of Regents of the Univ. Sys. of Georgia,* 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)). Such analogy does not withstand scrutiny, for waiver must be clear, explicit, and voluntary, and cannot be imposed on a state that has not voluntarily entered federal jurisdiction.

Thus the argument must be rejected that a state's entry into the patent system is a constructive waiver of immunity for actions in federal court against the state under the patent law.

### C

■ Xechem also argues that the grant of a patent is a "gift or gratuity" by the government, whereby acceptance of the grant is a constructive waiver of immunity, citing *Petty v. Tennessee–Missouri Bridge Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959) and *South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). The Court confirmed in *Petty* and again in *Dole* that Congress can condition receipt of federal funds on a commensurate waiver of state immunity. However, in *College Savings* the Court explained that such conditions on federal disbursements are "simply not analogous to *Parden*-style conditions attached to a State's decision to engage in otherwise lawful commercial activity." 527 U.S. at 678, 119 S.Ct. 2219.

■■ The grant of a patent is not a disbursement of governmental largesse. A gift is "nothing more than the transfer of property without consideration." *Kehr v. Smith,* 20 Wall.. 31, 87 U.S. 31, 34, 22 L.Ed. 313 (1873). In contrast, the government grant of a property right, *viz.* the right to exclude for a limited time, is conditioned on the creation and public disclosure of a new and useful invention. *See Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 63, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998) ("the patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time").

Patent activity is commercial activity, not governmental beneficence. The holdings of *Seminole Tribe,* and the overruling of *Parden,* have foreclosed the broad ruling that by obtaining patents the state constructively waived its Eleventh Amendment immunity as to any federal proceeding involving those patents. Xechem argues, as it did in the district court, that the reasoning in *New Star Lasers, Inc. v. Regents of the University of California,* 63 F.Supp.2d 1240 (E.D.Cal.1999) supports a theory of constructive waiver. The *New Star Lasers* court stated that although the Patent Remedy Act of 1992 may have failed as abrogating legislation, it succeeded as constructive waiver legislation. The Court explicitly rejected this distinction in *College Savings,* stating that "constructive waiver is little more than abrogation under another name." 527 U.S. at 684, 119 S.Ct. 2219.

### D

■ Xechem also argues that the University is not a necessary party to this action to correct inventorship, and there-

fore that it need not consent to or participate in the hearing, provided only that it received notice of the hearing. Under 35 U.S.C. § 256 ¶ 2 a court may order correction of inventorship over the objection of those adversely affected. *See Stark v. Advanced Magnetics, Inc.,* 119 F.3d 1551, 1553 (Fed.Cir.1997). Xechem argues that since the University cannot prevent the § 256 action from proceeding, both consent and immunity are irrelevant. Thus Xechem argues that the Eleventh Amendment does not bar suit to correct inventorship of a patent that is assigned to the University. The district court did not discuss whether the assignee is a necessary party to a § 256 ¶ 2 suit to correct inventorship. However, state entities are the only party-defendants to this suit; with no defendant, there is no suit.

 The pleadings stated that inventorship can be corrected only in federal court, but ownership issues are generally the province of state courts. Although the Federal Circuit has held that inventorship is determined under federal law, *see MCV, Inc. v. King–Seeley Thermos Co.,* 870 F.2d 1568, 1570 (Fed.Cir.1989), state courts can apply federal law to issues properly before the state court. *See Speedco, Inc. v. Estes,* 853 F.2d 909, 914 (Fed.Cir.1988) (citing *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239 (1943)). Federal preemption of causes arising under the Patent Act does not include matters of ownership or license. In *Jim Arnold Corp. v. Hydrotech Sys., Inc.,* 109 F.3d 1567, 1577 (Fed.Cir.1997) this court held that although an assignment and royalty agreement concerned patent property, that did not remove from the state courts the various disputes concerning property rights. Similarly, in *Prize Frize, Inc. v.*

*Matrix (U.S.), Inc.,* 167 F.3d 1261 (9th Cir.1999) the Ninth Circuit held that an alleged deprivation of patent ownership through various unlawful or unfair actions was not a claim under federal law; the court cited *Jim Arnold* for the holding that "[c]laims concerning patent ownership do not create federal jurisdiction." 167 F.3d at 1264.

Although the Court recognized in *Florida Prepaid* that possible state court remedies may be "uncertain" or "less convenient" or "might undermine the uniformity of patent law," the Court held that uncertainty and other disadvantages flowing from a state's claim of Eleventh Amendment immunity did not deprive a patentee of property without due process of law. 527 U.S. at 644–45, 119 S.Ct. 2199. The Court stated that it was necessary to show that the state action "left [the patentee] without a remedy under state law," *id.* at 647, 119 S.Ct. 2199, before the due process concerns of the Fourteenth Amendment could be implicated. Such a showing has not been made.

### Conclusion

Xechem's pleadings and representations do not meet the requirements of precedent for waiver or abrogation of a state's Eleventh Amendment immunity. Thus the district court's dismissal under Rule 12(b)(6) is

*AFFIRMED.*

PAULINE NEWMAN, Circuit Judge, additional views.

I write separately to state my concern lest the caveats and safeguards recognized by the Supreme Court in its rulings in *Florida Prepaid* and *College Savings*[4] be-

---

4. In *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666, 119 S.Ct. 2219, 144

come submerged in generalizations of absolute state immunity. The Court observed in *Florida Prepaid* that if no state court remedy were available for patent infringement, such failure of recourse could raise the due process concerns of the Fourteenth Amendment. Compare *Tennessee v. Lane*, —— U.S. ——, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (legislative abrogation sustained on due process grounds for violation of Title II of the Americans with Disabilities Act of 1990) with *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (legislative abrogation rejected in claims for money damages for violation of Title I of the ADA). Although Xechem is here seeking judicial, not legislative, relief, its due process claims on the ground that there is no alternative remedy have not been fully explored. Nor did Xechem in this action seek the alternative path marked by *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). These aspects are not raised in this dismissal on the pleadings.

### Intellectual Property and the Fourteenth Amendment

In *Florida Prepaid* the Court, discussing abrogation of Eleventh Amendment immunity, stated that "only where the State provides no remedy, or only inadequate remedies, to injured patent owners for its infringement of their patent could a deprivation of property without due process result." 527 U.S. at 643, 119 S.Ct. 2199, quoting *Hudson v. Palmer*, 468 U.S. 517, 539, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (O'Connor, J., concurring) that "in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate," in turn citing *Parratt v. Taylor*,

451 U.S. 527, 537–544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Throughout the evolution of Eleventh Amendment jurisprudence the Court has stressed the rigor of the restraint imposed by the Fourteenth Amendment on the federal government as well as on the states. Thus the Court found in *Florida Prepaid* that patent infringement by states did not appear to be a sufficiently prevalent national problem to warrant § 5 abrogation. And in *College Savings* the Court held that unfair competition by a state based on false advertising did not raise a Fourteenth Amendment property issue; the Court observed that general business interests are not property rights, and held that while trademarks are constitutionally protected property, false advertising has no relation to the right to exclude and does not raise a constitutional issue. The Court recognized, however, that "the assets of a business ... unquestionably are property, and any state taking of these assets is unquestionably a 'deprivation' under the Fourteenth Amendment." *College Savings*, 527 U.S. at 675, 119 S.Ct. 2219.

Xechem has asserted that in this case inventorship controls ownership and the right to practice the patented invention—fundamentals of patent property. *See Consolidated Fruit–Jar Co. v. Wright*, 94 U.S. (4 Otto) 92, 96, 24 L.Ed. 68 (1876) ("A patent for an invention is as much property as a patent for land"). Xechem's claim on its face raises issues of property and due process. The Court explained in *Florida Prepaid* that "[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest ... is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." 527 U.S. at 642–43, 119 S.Ct. 2199 (quoting

L.Ed.2d 605 (1999) the Court invalidated the 1992 legislative abrogation of state immunity from suit under the patent and trademark laws.

*Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). However, the Court in *Florida Prepaid* required a showing—more than an allegation—of the unavailability of adequate remedy in state court. Although Xechem argues that only federal courts can order a change of inventorship, precedent has not dealt with whether state courts are precluded from resolving issues of ownership of patent property when ownership is based on inventorship.

In *Florida Prepaid* the Court noted that patent infringement by the state might be remedied in state court on the traditional state law grounds of taking of property or conversion, 527 U.S. at 644 n. 9, 119 S.Ct. 2199, observing that a factor in the due process provision of the Fourteenth Amendment is whether any remedy is otherwise available. However, precedent establishes no ready rule as to when the nature of the wrong and remedy warrant recourse to the Fourteenth Amendment. On the record before us, and the premises of Rule 12(b)(6), the question of alternative remedy was not explored. We are told that various state law counts were withdrawn from the complaint in the district court; however, the potential presence of other issues does not avoid this dismissal on the pleadings. These questions are not resolved by today's decision.

**The Doctrine of Ex Parte Young**

The Court in *Florida Prepaid* also mentioned potential recourse to the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that a state employee is not shielded by Eleventh Amendment immunity if the employee has acted in violation of federal law. The Court held that although state immunity barred suit in federal court against Mr. Young in his capacity as attorney general of Minnesota, he could be sued in his personal capacity and his wrongful actions enjoined. While cautioning that "the real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading," *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), the Court explained the two general situations in which *Ex parte Young* has been applied:

> Putting aside the acts of state officials which are plainly ultra vires under state law itself, there are, in general, two instances where *Young* has been applied. The first is where there is no state forum available to vindicate federal interests, thereby placing upon Article III courts the special obligation to ensure the supremacy of federal statutory and constitutional law.

*Coeur d'Alene,* 521 U.S. at 270, 117 S.Ct. 2028 (citations omitted).

> Even if there is a prompt and effective remedy in a state forum, a second instance in which *Young* may serve an important interest is when the case calls for the interpretation of federal law. This reasoning, which is described as the interest in having federal rights vindicated in federal courts, can lead to expansive application of the *Young* exception.

*Id.* at 274, 117 S.Ct. 2028 (citations omitted). The Court again reviewed the application of *Ex parte Young* against a claim of Eleventh Amendment immunity in *Verizon Maryland, Inc. v. Public Service Commission of Maryland,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002):

> Whether the Commission waived its immunity is another question we need not decide, because ... even absent waiver, Verizon may proceed against the individual commissioners in their official capacities pursuant to the doctrine of *Ex parte Young,* ... In determining whether the doctrine of *Ex parte Young* avoids

an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."

*Id.* at 645, 122 S.Ct. 1753 (citations omitted).

The applicability of *Ex parte Young* to Xechem's claim of incorrect inventorship was not raised on this appeal. Although Xechem states that Dr. Andersson violated federal law in averring that he is the sole inventor, neither he nor any other employee or agent of the state was sued individually in his official capacity. I express no view as to whether *Young* offers a path to relief on the issue here presented; this aspect is not resolved by this dismissal on the pleadings.

## A Continuing Concern

The circumstances of this case illustrate that when a state is charged with contravention of federal law in a way that directly affects private property, and if no remedy is indeed available within the state's tribunals—whether by the state's invocation of immunity or by federal preemption of the cause of action—there can arise an affront to the fundamentals of due process. Respect for the principles of federalism does not automatically immunize the state from due process considerations. The Court in *Florida Prepaid* kept this door ajar. I write to the same purpose, for there is an increasing urgency, as the states enter the private competitive arena governed by the laws of intellectual property, to establish fair relationships and just recourse.