# United States Court of Appeals for the Federal Circuit

06-1100

VAS-CATH, INCORPORATED,

Plaintiff-Appellant,

v.

CURATORS OF THE UNIVERSITY OF MISSOURI,
DON WALSWORTH, CHERYL D.S. WALKER, ANNE C. REAM,
M. SEAN MCGINNIS, MARION H. CAIRNS, ANGELA M. BENNETT,
THOMAS E. ATKINS, VICKI M. ELLER, MARY L. JAMES
and CONNIE HAGER SILVERSTEIN,

Defendants-Appellees.

Vincent J. Belusko, Morrison & Foerster LLP, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief was J. Manena Bishop. Of Counsel was Nicole M. Smith.

Barbara C. McCurdy, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for defendants-appellees. With her on the brief was Lara C. Kelley.

Appealed from: United States District Court for the Western District of Missouri

Judge Gary A. Fenner

# United States Court of Appeals for the Federal Circuit

06-1100

VAS-CATH, INCORPORATED,

Plaintiff-Appellant,

v.

CURATORS OF THE UNIVERSITY OF MISSOURI,
DON WALSWORTH, CHERYL D.S. WALKER, ANNE C. REAM,
M. SEAN MCGINNIS, MARION H. CAIRNS, ANGELA M. BENNETT,
THOMAS E. ATKINS, VICKI M. ELLER, MARY L. JAMES
and CONNIE HAGER SILVERSTEIN,

Defendants-Appellees.

_____

DECIDED: January 23, 2007

_____

Before NEWMAN, LOURIE, and RADER, Circuit Judges.

NEWMAN, Circuit Judge.

Vas-Cath, Inc. appeals the dismissal of its appeal of the decision of the United States Patent and Trademark Office ("PTO") in an interference proceeding between Vas-Cath and the University of Missouri.[1] The appeal was dismissed by the United States

_____

1    Vas-Cath, Inc. v. Curators of the Univ. of Missouri, No. 05-0400-CV-W-GAF (W.D. Mo. Oct. 25, 2005).

District Court for the Western District of Missouri, on Eleventh Amendment grounds. We conclude that the Eleventh Amendment does not shield the University from appeal of the PTO's decision in favor of the University. By requesting and participating in the interference proceeding in the PTO, the University waived its constitutional immunity not only in that proceeding but also in the appeal taken by the losing party. Accordingly, the dismissal of the appeal is reversed.

## BACKGROUND

A patent interference proceeding, 35 U.S.C. §135, is conducted for the purpose of determining priority of invention as between competing applicants for patent on the same invention. In general the patent examiner checks for interfering patent applications while they are pending, Manual of Patent Examining Procedure ("MPEP") §2303[2] ("Where two or more applications are found to be claiming the same patentable invention, they may be put in interference, dependent on the status of the respective applications and the difference between their filing dates."), and if conflict is discovered the examiner will initiate interference proceedings or suggest that the applicant amend the application by presenting a claim drawn to the same invention for interference purposes. See id. ("If the applications each contain at least one claim drawn to the same patentable invention (37 CFR 1.601(n)),

---

2       Citations are to the version of the MPEP and C.F.R. in effect at the time of the events herein (the interference was declared on Aug 19, 1997 and the judgment from the Board of Patent Appeals and Interferences issued on July 30, 2003). Subsequent revisions do not affect the issues of this case. As of July 1, 2006, patent interferences are at 37 C.F.R. part 41.

the examiner proceeds to propose the interference."); see also MPEP §2305 ("[T]he examiner may suggest that an applicant present a claim drawn to an invention claimed in another application or patent for the purpose of an interference with another application or patent.").

Occasionally the examiner does not act with respect to interfering applications, and a patent is issued to one applicant while another application on the same invention is still pending. In such event the applicant can request that an interference be conducted between the pending application and the issued patent. See 37 C.F.R. §1.607 (entitled "Request by applicant for interference with patent"); MPEP §2306.01 ("In order to avoid the issuance of two patents to the same patentable invention, the examiner should take steps to propose an interference between the application and the patent."). Following such proceeding and upon the PTO's determination of priority, the prior inventor is granted a patent and, if the losing party has already obtained a patent, the lost claims of the issued patent will be cancelled by operation of law. MPEP §2363.03 ("The Board's judgment in an interference conducted under 37 CFR subpart E will state that the losing party is not entitled to a patent containing the claims corresponding to the count or counts."). See generally 35 U.S.C. §135(a) (Interferences - "A final judgment adverse to a patentee from which no appeal or other review has been or can be taken or had shall constitute cancellation of the claims involved in the patent.").

That is the situation at bar. The Vas-Cath patent had issued while the University's application, although filed before the Vas-Cath application, was still pending. The University invoked the procedures to institute an interference between the University's pending application and Vas-Cath's issued patent; the University amended its application

by copying into the application all nineteen claims from the Vas-Cath patent, as the practice permits. During the ensuing six-year interference proceeding both sides vigorously contested the issues, producing records, examining and cross-examining witnesses, filing motions and briefs, and arguing their positions. The PTO awarded priority to the University, granted the nineteen Vas-Cath claims to the University, and held that Vas-Cath is not entitled to the patent that had been issued to Vas-Cath. The Board ruled: "Accordingly, senior party Twardowski is entitled to a patent including its application claims which correspond to the count (namely, claims 1 and 19-38) and junior party Martin is not entitled to a patent including any of its patent claims which correspond to the count (namely, claims 1-19)." Martin v. Twardowski, Patent Interference No. 103,988 (Bd. Pat. App. & Int. 2003). These were all of the claims in the Vas-Cath (Martin) patent.

Vas-Cath appealed, as authorized by 35 U.S.C. §146,[3] to the United States District Court for the District of Columbia. On the University's motion that court transferred the case to the Western District of Missouri pursuant to 28 U.S.C. §1406(a). In Missouri the University asserted Eleventh Amendment immunity from suit in federal court, and on this ground the district court granted the University's motion to dismiss.

---

[3] 35 U.S.C. §146. Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided. . . . .

DISCUSSION

The Eleventh Amendment limits the judicial authority of the federal courts and bars unconsented suit against a state.[4] See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 268 (1997) (a state cannot be sued in federal court without its consent); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (stating that "federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'") (quoting Hans v. Louisiana, 134 U.S. 1, 15 (1890)). The entitlement of the University of Missouri to the constitutional immunity of the state is not disputed. Mo. Const. Article IX, §9(a); Mo. Rev. Stat. §172.020 (2000). Issues of Eleventh Amendment immunity receive plenary appellate review. McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, Dep't of Bus. Regulation of Florida, 496 U.S. 18, 30 (1990); Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 348 (1816); Xechem Int'l, Inc. v. Univ. of Texas M.D. Anderson Cancer Center, 382 F.3d 1324, 1326-27 (Fed. Cir. 2004).

**A**

The district court held that since there was not a waiver of immunity by the University, Vas-Cath's suit must be dismissed on Eleventh Amendment grounds. The court relied on Quileute Indian Tribe v. Babbitt, 18 F.3d 1456 (9th Cir. 1994), wherein the court

---

4    U.S. Const., amend. XI. The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

addressed the question of whether participation in contested proceedings before the Interior Board of Indian Appeals constituted a waiver by the winning tribe of tribal immunity as to the ensuing appeal by the losing tribe. The court held that the prevailing tribe had not waived its immunity as to the subsequent court action, stating that the Quinault Tribe's participation in the administrative proceeding, which it had not initiated, was not "the express and unequivocal waiver of tribal immunity that we require in this circuit." Id. at 1460. By analogy, the Missouri district court held that the University had not waived its immunity as to the subsequent appeal by Vas-Cath of the PTO decision.

Vas-Cath points to factual differences from the Quileute case and argues that Supreme Court precedent, applied to the facts of this case, indeed supports waiver. Vas-Cath stresses that the interference contest in the PTO was conducted at the University's request, that the University fully participated in the PTO proceeding and voluntarily produced state witnesses and documents, that the result was to deprive Vas-Cath of its property, and that no Eleventh Amendment immunity was asserted by the University at any stage of that proceeding. Vas-Cath argues that any immunity was clearly and unequivocally waived when the University provoked and successfully litigated the interference contest, and that such waiver includes appeal by the party that lost its patent to the University; Vas-Cath states that its §146 action was not a new claim against the University, but simply the statutory path of review of the agency ruling.

The University responds that it has absolute immunity from any action in federal court, and that this immunity was not waived by its participation in the PTO proceeding or its action to secure the patent to which it was entitled as first inventor. The University

states that this civil action by Vas-Cath improperly subjects the University, as an arm of the state, to federal authority, in violation of the Constitution.

**B**

It is established that a state's participation in the federal patent system does not of itself waive immunity in federal court with respect to patent infringement by the state, and that such waiver cannot occur unless the conditions are such that there is violation of the Fourteenth Amendment's guarantee of due process. In <u>Florida Prepaid Postsecondary Education Expense Bd. v. College Savings Bank</u>, 527 U.S. 627 (1999) the Court held that Congress does not have authority to abrogate Eleventh Amendment immunity with respect to patent infringement by the states, for "Congress identified no pattern of patent infringement by the States, let alone a pattern of constitutional violations," <u>id.</u> at 640, and that the provisions of the Patent Remedy Act are unconstitutional as out of proportion to the supposed remedial object. In the companion case, <u>College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.</u>, 527 U.S. 666 (1999) the Court considered state immunity in the context of trademark infringement and explained:

> Nor do we think that the constitutionally grounded principle of state sovereign immunity is any less robust where, as here, the asserted basis for constructive waiver is conduct that the State realistically could choose to abandon, that is undertaken for profit, that is traditionally performed by private citizens and corporations, and that otherwise resembles the behavior of "market participants."

<u>Id.</u> at 684. This court, applying these principles in <u>Xechem</u>, 382 F.3d at 1332, held that absent a sufficient showing of lack of remedy under state law, suit against a state university in federal court to obtain correction of inventorship was correctly dismissed on Eleventh Amendment grounds.

On this background, we turn to the question of whether the Eleventh Amendment immunizes the University from appeal of the decision in the PTO proceeding in which the University prevailed. Vas-Cath argues that precedent does not authorize the University to bar an appeal by the losing party, while retaining the benefits of the PTO decision. In Lapides v. Board of Regents of Univ. System of Georgia, 535 U.S. 613 (2002), the Court guided the Eleventh Amendment inquiry to "focus on the litigation act the State takes that creates the waiver." Id. at 620. In Lapides the state defendant was held to have waived its Eleventh Amendment immunity by voluntarily removing the case from state to federal court. Id. In College Savings Bank, 527 U.S. at 675-76, the Court had reaffirmed that the state waives its immunity when it voluntarily invokes federal jurisdiction or makes a clear declaration of its intention to submit itself to federal jurisdiction. And when a state voluntarily invokes federal jurisdiction, it is deemed to have waived its objection not only to the cause of action but also to any relevant defenses and counterclaims. See Regents of the Univ. of New Mexico v. Knight, 321 F.3d 1111, 1126 (Fed. Cir. 2003) (the University waived its Eleventh Amendment immunity to the counterclaims by filing suit for a declaration of patent ownership and inventorship, for "when a state files suit in federal court to enforce its claims to certain patents, the state shall be considered to have consented to have litigated in the same forum all compulsory counterclaims, i.e., those arising from the same transaction or occurrence that gave rise to the state's asserted claims").

Vas-Cath argues that when the University requested the PTO to conduct an interference proceeding without raising any Eleventh Amendment issue, a waiver was created that extends not only to the initial agency litigation but also to the subsequent judicial review. Judicial review of PTO adjudications is established by statute, and when such procedure is invoked by the losing party in an interference proceeding, the result of that proceeding is stayed. See 37 C.F.R. §1.663 ("Whenever an adverse judgment is entered as to a count against an applicant from which no appeal (35 U.S.C. 141) or other review (35 U.S.C. 146) has been or can be taken or had, the claims . . . stand finally disposed of."). Upon completion of judicial review, the patenting process is completed. See 35 U.S.C. §146 ("Judgment of the court in favor of the right of an applicant to a patent shall authorize the Director to issue such patent."). Thus the interference proceeding is a multi-part action with appeal as of right, starting in the PTO and culminating in court. The civil action authorized by §146 is not a new claim, but an authorized phase of the interference proceeding that is conducted by the PTO and is subject to judicial review. See Rexam Indus. Corp. v. Eastman Kodak Co., 182 F.3d 1366, 1370 (Fed. Cir. 1999) (a §146 action is "derivative of the interference conducted in the PTO" and includes the issues before the Board); Conservolite v. Widmayer, 21 F.3d 1098, 1101 (Fed. Cir. 1994) ("Judicial review of the Board's determinations in an interference is provided for by 35 U.S.C. §146."); 37 C.F.R. §1.661(a) ("If an appeal to the U.S. Court of Appeals to the Federal Circuit (under 35 U.S.C. 141) or a civil action (under 35 U.S.C. 146) has been filed the interference is considered terminated when the appeal or civil action is terminated.").

In Federal Maritime Comm'n v. South Carolina State Ports Authority, 535 U.S. 743, 757-59 (2002) the Court drew analogy between some agency proceedings and civil

litigation, in that case to preserve the immunity of the non-consenting state in the agency proceeding. Like proceedings in the Federal Maritime Commission, contested interference proceedings in the PTO bear "strong similarities" to civil litigation, id. at 760, and the administrative proceeding can indeed be characterized as a lawsuit. PTO interferences involve adverse parties, examination and cross-examination by deposition of witnesses, production of documentary evidence, findings by an impartial federal adjudicator, and power to implement the decision. See, e.g., 37 C.F.R. §1.651(a) (during an interference, "an administrative patent judge shall set a time for filing motions (§1.635), for additional discovery under §1.687(c) and testimony period for taking any necessary testimony."); §1.671(a) ("Evidence [for an interference] consists of affidavits, transcripts of depositions, documents and things."); §1.671(b) ("[T]he Federal Rules of Evidence shall apply to interference proceedings" except "[t]hose portions of the Federal Rules of Evidence relating to criminal actions, juries, and other matters not relevant to interferences."). The University invoked and participated in these proceedings with no claim of immunity.

The district court correctly observed that "a state does not waive its sovereign immunity simply by engaging in activities normally conducted by private individuals or corporations." Op. at 9. However, here the University did not simply procure a patent through the routine of ex parte examination, but requested the PTO to conduct litigation-type activity, obtaining a favorable agency ruling for which the statute authorizes judicial review. The principles of federalism are not designed for tactical advantage; the Lapides Court recognized the possibility of a state's "selective use of 'immunity' to achieve litigation advantages," 535 U.S. at 620 (citing Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring)). The Court stated that "the Court has

made clear in general that 'where a State <u>voluntarily</u> becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.'" <u>Id.</u> at 619 (quoting <u>Gunter v. Atlantic Coast Line R. Co.</u>, 200 U.S. 273, 284 (1906)) (emphasis in original). The Court in <u>Lapides</u> recognized that there is a distinction between an express waiver of immunity, and waiver by actions taken by the state. <u>See</u> 535 U.S. at 620 (waiver based on action of removal to federal court).

It has long been recognized that a state's voluntary entry into federal court serves to waive state immunity from federal adjudication of that claim. <u>Clark v. Bernard</u>, 108 U.S. 436, 447 (1883). The <u>Lapides</u> Court observed that inferred waiver of the Eleventh Amendment "in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire." 535 U.S. at 620. The University here invoked the statutory system of agency adjudication of a contested claim to patent property. Unlike the situation in <u>College Savings Bank</u>, 527 U.S. at 685, this is not "a suit by an individual against an unconsenting State," but review of an agency adjudication to which the state consented in full adversary proceedings including testimony of state employees and evidence of state documents. In <u>New Hampshire v. Ramsey</u>, 366 F.3d 1 (1st Cir. 2004) the court held that when the state voluntarily participated in a federal administrative forum whose action would be reviewed in federal court, the state waived its immunity from that federal court review. In <u>Ramsey</u> the court found waiver because the state gained advantage from its voluntary participation in the federal administrative forum. <u>Id.</u> at 16. We agree that this result, applied to the factual situation now presented, is within constitutional principles.

06-1100                                    11

The University argues that <u>Xechem</u> supports its position. In <u>Xechem</u> a private party filed suit against a state university in federal court to change the inventorship of university-owned patents that resulted from a joint research project; the university did not consent to the suit and the Federal Circuit affirmed that the Eleventh Amendment bars the suit. 382 F.3d at 1332. However, the university in <u>Xechem</u> did not request the adjudication, did not initiate and participate in a PTO adversarial proceeding, did not engage in litigation-like conduct, and there was no contested proceeding in which the university waived immunity and obtained the property of the losing party. We conclude that <u>Xechem</u> does not support the University's position herein.

The University's recourse to the PTO tribunal for adjudication of its claim of prior inventorship and thus of patent ownership negates the assertion of immunity to bar appeal of that adjudication. Principles of fairness and consistency prohibit selective assertion of immunity to avoid appeal by the loser after the University won the first round.

**C**

The University also argues that because a §146 appeal can involve live testimony and witnesses in the courtroom, it is not simply a continuation of an administrative proceeding. However, the University's full participation in the PTO proceeding negates its argument that the Eleventh Amendment shields its employees from testifying, for University witnesses testified in the PTO without raising any objection on Eleventh Amendment grounds.

The University argues that it had no choice but to request the interference and participate in an adversarial proceeding, for if it had not taken this action it would have lost its rightful patent to Vas-Cath. The University points out that although the PTO could have

06-1100                                    12

and should have initiated this interference while the applications of both parties were pending, the PTO did not do so. Thus the University argues that its initiation of the interference was not a voluntary act, but an act of necessity compelled by the PTO's grant of a patent to the junior applicant. The University states that its position is supported by the Court's holding in College Savings Bank that "where the constitutionally guaranteed protection of the State's sovereign immunity is involved, the point of coercion is automatically passed-and the voluntariness of waiver destroyed-when what is attached to the refusal to waive is the exclusion of the State from otherwise lawful activity." 527 U.S. at 687. However, the question in this case is not whether the University voluntarily participated in the PTO interference, but whether the University can now bar the appeal of the PTO's decision in favor of the University. This argument raises issues not of federalism, but of litigation tactics, for it is undisputed that the PTO decision cannot be reviewed in state court. And it is undisputed that no recourse was made to the Eleventh Amendment during the PTO proceeding. As the Ramsey court pointed out:

> The state voluntarily put itself in the position of being a party in a federal administrative forum whose actions would be reviewed in federal court. The state's actions expressed a clear choice to submit its rights for adjudication in the federal courts. To permit the state to reverse course would contravene the reasons for the doctrine of waiver by litigation conduct recognized by Lapides . . . .

366 F.3d at 16-17. We need not consider whether the University intended to gain an unfair tactical advantage, for "[m]otives are difficult to evaluate, while jurisdictional rules should be clear." Lapides, 535 U.S. at 621. We have concluded that when the University initiated and participated in the interference, its participation included the ensuing statutory review

procedures; the University cannot invoke Eleventh Amendment immunity, after it prevailed, to shield the agency decision from review.

**D**

We agree with the district court that Vas-Cath's naming the individual Curators of the University of Missouri as defendants does not invoke Ex parte Young, 209 U.S. 123 (1908). In Young the Court explained that there must be "some connection with the enforcement of the act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." Id. at 157. We have been directed to no connection between the interference proceeding and actions of the University curators.

**E**

The University also argued that Vas-Cath chose the wrong appellate route in proceeding under 35 U.S.C. §146, and should have appealed directly to the Federal Circuit under 35 U.S.C. §141. Upon inquiry from the bench, the University's counsel stated that only "a straight appeal that does not name the state here" is permissible under the Eleventh Amendment, thus apparently departing from the position argued in the brief. In any event, we are not told how appeal under §141 can avoid naming the University as a party. See Wu v. Wang, 129 F.3d 1237, 1240 (Fed. Cir. 1997) (judicial appeals under §141 and §146 are alternative routes to challenge the Board's final judgment in an interference proceeding); In re Van Geuns, 946 F.2d 845, 849 (Fed. Cir. 1991) (party seeking review of an interference decision has the choice of either filing an appeal in the Federal Circuit under §141 or an initial suit in a district court under §146).

*Summary*

The University initiated and participated in the contested PTO interference against Vas-Cath; we conclude that the University cannot both retain the fruits of that action and bar the losing party from its statutory right of review, even if that review is conducted in federal court. In the circumstances that here exist, the state's actions with respect to the interference include waiver with respect to the ensuing civil action. Having waived any potential immunity as to the interference contest in the PTO, we conclude that the University waived any Constitution-based objection to Vas-Cath's statutory right of judicial review. The dismissal of the §146 action is reversed; we remand to the district court for further proceedings.

REVERSED AND REMANDED